**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 27, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ALAN BLAKELY; COLELYN
BLAKELY,

      Plaintiffs - Appellants,

v.

USAA CASUALTY INSURANCE
COMPANY,

      Defendant - Appellee.

No. 15-4059
(D.C. No. 2:06-CV-00506-BSJ)
(D. Utah)

---

**ORDER AND JUDGMENT**[*]

---

Before **HOLMES**, **MURPHY**, and **BACHARACH**, Circuit Judges.[**]

Plaintiffs-Appellants Alan and Colelyn Blakely appeal from an adverse

summary judgment in which the district court determined that they failed to

demonstrate the damages necessary to advance a cognizable claim for breach of

the implied covenant of good faith and fair dealing ("Implied Covenant") against

---

[*]     This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

[**]     After examining the briefs and appellate record, this panel has determined unanimously to resolve this appeal on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument.

their homeowner's insurance provider, USAA Casualty Insurance Company ("USAA"). This is the third time the Blakelys have appealed to this court based on the same underlying facts and allegations.[1] Exercising jurisdiction under 28 U.S.C. § 1291, we **affirm** the district court's grant of summary judgment in favor of USAA.

# I

Mr. and Ms. Blakely own a home in Bountiful, Utah, which was insured under a homeowner's insurance policy issued by USAA. The policy insured against losses to the home and personal property.[2] In August 2002, a fire broke

---

[1] The Blakelys filed a fourth appeal from the same district court action, *see Blakely v. USAA Cas. Ins. Co.*, No. 15-4017, but voluntarily dismissed the appeal prior to merits briefing.

[2] The policy provided the following procedure in the event of a loss:

> 2. **Your Duties After Loss**. In case of a loss to which this insurance may apply, you must see that the following are done:
>
> . . . .
>
> e. prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;
>
> . . . .
>
> g. send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:
>
> (continued...)

out in the basement of the home after a flooring contractor, Desert Rose Roofing, Inc., doing business as Stone Touch ("Stone Touch"), applied a flammable sealant. Although the fire was contained within the basement, smoke and soot damaged other sections of the home, including floor joists, exposed subflooring, and personal property.

---

[2](...continued)

> (1) the time and cause of loss;
>
> (2) the interest of the Insured and all others in the property involved and all liens on the property;
>
> (3) other insurance which may cover the loss;
>
> (4) changes in title or occupancy of the property during the term of the policy;
>
> (5) specifications of damaged buildings and detailed repair estimates;
>
> (6) the inventory of damaged personal property described in 2e above;
>
> (7) receipts for Additional Living Expenses and Temporary Living Expense, incurred and records that support the Fair Rental Value loss; and
>
> (8) evidence or affidavit that supports a claim under ADDITIONAL COVERAGES, Credit Card, Fund Transfer Card, Forgery and Counterfeit Money coverage, stating the amount and causes of loss.

Aplts.' App., Vol. VI, at 1225–26 (Ins. Policy, dated Nov. 2, 2001 through Nov. 2, 2002).

The Blakelys prepared an inventory of their losses and made a claim under their USAA policy. USAA then sent an adjuster to inspect the damage, and USAA's preferred contractor ultimately repaired most of the damage to the home. By mid-2003, USAA had paid out $93,332.20 on the claim—*viz.*, $47,789.94 for the home, $37,832.70 for personal property, and $7,709.56 for temporary housing. However, the Blakelys were dissatisfied with the repairs to their home and the extent to which their personal property had been cleaned or replaced. Although USAA refused to authorize additional expenses, the Blakelys paid for further cleaning and repairs themselves. Around this time, the Blakelys also filed suit against Stone Touch.[3]

In January 2005, the Blakelys invoked their contractual right to an appraisal.[4] The Blakelys asserted that they were entitled to $468,575.05 on the

---

[3]    USAA later intervened in the Stone Touch suit under a subrogation claim for the $93,332.20 that it paid on the Blakelys' claim and any additional sums.

[4]    The homeowner's insurance policy contained an "appraisal clause" related to the determination of the loss amount:

> **Appraisal**. If you and we do not agree on the amount of loss, either party can demand that the amount of the loss be determined by appraisal. If either makes a written demand for appraisal, each will select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand.
>
> The two appraisers will then select a competent, impartial umpire. If the two appraisers are not able to agree upon the

(continued...)

4

claim; however, in October 2005, the three appraisers retained under the policy's terms—one by the Blakelys—awarded only $291,356.52. After a credit for the $93,332.20 that USAA had already paid under the policy, the Blakelys were still owed $197,524.32.[5] The Blakelys admit that with the payment of the remaining appraisal award on December 5, 2005, USAA owes them nothing further under the policy's plain terms.

In 2006, the Blakelys filed suit against USAA in state court, claiming breach of contract, breach of the Implied Covenant, breach of industry and statutory standards, and intentional infliction of emotional distress. The Blakelys alleged, *inter alia*, that they suffered financial and emotional damages resulting from USAA's failure to make adequate and timely repairs, reimbursements, and

---

[4](...continued)

> umpire within 15 days, you and we can ask a judge of a court of record in the state where the residence premises is located to select an umpire.
>
> The appraisers will then set the amount of loss. If they submit a written report of any agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree within a reasonable time, they will submit their differences to the umpire. Written agreement signed by any two of these three will set the amount of the loss. Each appraiser will be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire will be equally paid by you and us.

Aplts.' App., Vol. VI, at 1226.

[5] Although the district court calculated the remaining balance as $197,524.32, the actual remainder appears to have been $198,024.32.

investigations. USAA removed the suit to federal court based on diversity jurisdiction. Following discovery, the district court granted summary judgment in favor of USAA on all claims except the claim for breach of the Implied Covenant. Instead of summary judgment, the district court granted USAA's oral motion to dismiss the Blakelys' Implied-Covenant claim as frivolous under Federal Rule of Civil Procedure 16(c)(2)(A).

The Blakelys appealed for the first time, and our court affirmed the district court's grant of summary judgment, but reversed the dismissal of the Implied-Covenant claim. Without expressing an opinion "on the merits of the Blakelys' claim for breach of the implied covenant of good faith and fair dealing," we specifically held that

> the Blakelys alleged and put forth the following evidence suggesting that USAA acted unreasonably in taking its initial position regarding the loss amount: the appraisal award was nearly three times, or $200,000 more, than USAA's initial payout of $93,322.20; USAA's adjuster refused to communicate with the Blakelys; USAA's adjuster claimed that he could not smell smoke when the smell proved noticeable [to the appraisers] in the house three years later; USAA delegated adjustment of the contents claim to a non-adjuster; and USAA refused to pay for any repairs other than structural ones.

*Blakely v. USAA Cas. Ins. Co.*, 633 F.3d 944, 950 (10th Cir. 2011). On remand, the district court granted summary judgment in favor of USAA on the Blakelys' Implied-Covenant claim. *See Blakely v. USAA Cas. Ins. Co.*, No.

6

2:06–CV–00506, 2011 WL 6218212 (D. Utah Dec. 6, 2011), *reversed and remanded by* 500 F. App'x 734 (10th Cir. 2012) (unpublished).

The Blakelys appealed a second time to this court, mounting a challenge to the district court's determination that they had put forward no genuine issue of material fact. *See Blakely*, 500 F. App'x at 738. A panel of this court concluded that the following four material facts suggested that USAA acted unreasonably: *viz.*, (1) USAA refused to replace several charred floor joists, and only replaced a small section of burned subflooring after repeated complaints from the Blakelys; (2) USAA's structural adjuster refused at times to communicate with the Blakelys; (3) the structural adjuster claimed not to be able to smell smoke, even though the appraisers could smell smoke three years later; and (4) USAA's personal-property adjuster did not travel to Utah, delegated her duties to a person who was not an adjuster, and denied coverage for numerous personal and household items. *See id.* at 739–40. Pointing to *Jones v. Farmers Insurance Exchange*, 286 P.3d 301 (Utah 2012), the panel explained that summary judgment was inappropriate under Utah law, because "[a] jury could conclude [USAA] breached its duties by undervaluing [the Blakelys'] loss" or "acted unreasonably by not instructing [the Blakelys] to submit their claims in a signed proof of loss." *Id.* at 741.

On remand a second time, the district court again granted summary judgment in USAA's favor. This time, however, the district court reasoned that

the Blakelys "failed to proffer plausible damages attributable to the alleged breach of the implied contract covenant," and "[a]bsent viable damages, the exercise of trial pursuant to the Tenth Circuit's mandate and application of *Jones* would be purely academic." Aplts.' App., Vol. VIII, at 1683 (Dist. Ct. Order, dated Apr. 2, 2015). More specifically, the district court considered the Blakelys' alleged damages for emotional distress, economic loss, and attorney's fees and costs, and concluded that none were recoverable under Utah law.

The Blakelys timely appealed this decision of the district court.

## II

This appeal presents the single issue of whether the Blakelys advanced a theory of recoverable damages as part of their claim against USAA for breach of the Implied Covenant. We review de novo the district court's dismissal of their claim on a motion for summary judgment. *See Hertz v. Luzenac Grp.*, 576 F.3d 1103, 1107 (10th Cir. 2009) ("We review the dismissal of these claims on a motion for summary judgment de novo."); *accord Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1129 (10th Cir. 2003). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Macon v. United Parcel Serv., Inc.*, 743 F.3d 708, 712 (10th Cir. 2014).

Because this is a diversity case, we must independently discern the content of and apply state law—specifically, Utah law. *See, e.g.*, *Mid-Continent Cas. Co.*

8

*v. Circle S Feed Store, LLC*, 754 F.3d 1175, 1178 (10th Cir. 2014) ("Because this is a diversity case, we ascertain and apply state law—in this case, New Mexico law."); *Yousuf v. Cohlmia*, 741 F.3d 31, 47 (10th Cir. 2014) (noting that, where jurisdiction is based on the parties' diverse citizenship, a federal court is "not to reach our own judgment regarding the substance of the common law, but simply to ascertain and apply state law." (quoting *Kokins v. Teleflex, Inc.*, 621 F.3d 1290, 1295 (10th Cir. 2010))); *McIntosh v. Scottsdale Ins. Co.*, 992 F.2d 251, 253 (10th Cir. 1993) ("We review de novo the district court's rulings with respect to Kansas law."). Under Utah law, the construction of an insurance policy is a legal question, which we review de novo. *See Mid-Continent Cas. Co.*, 754 F.3d at 1178; *see also S.W. Energy Corp. v. Cont'l Ins. Co.*, 974 P.2d 1239, 1242 (Utah 1999) ("Interpretation of an insurance policy involves ordinary rules of contract construction. We accord no deference to the trial court's interpretation of the policy, but review the court's legal conclusions for correctness." (citation omitted)).

## A

"When the federal courts are called upon to interpret state law, the federal court must look to the rulings of the highest state court, and, if no such rulings exist, must endeavor to predict how that high court would rule." *Stickley v. State Farm Mut. Auto. Ins. Co.*, 505 F.3d 1070, 1077 (10th Cir. 2007) (quoting *Johnson v. Riddle*, 305 F.3d 1107, 1118 (10th Cir. 2002)). "The decision of an

intermediate appellate state court is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *Kokins*, 621 F.3d at 1297 (quoting *Stickley*, 505 F.3d at 1077); *accord Etherton v. Owners Ins. Co.*, 829 F.3d 1209, 1223 (10th Cir. 2016); *cf. A.M. v. Holmes*, 830 F.3d 1123, 1140–41 (10th Cir. 2016) ("When a state Supreme Court has not spoken on the question at issue, we assume (without deciding) that a reasonable officer would seek guidance regarding the scope of proper conduct at least in part from any on-point decisions of the state's intermediate court of appeals."). However, under the principles of stare decisis, "[w]hen a panel of this Court has rendered a decision interpreting state law, that interpretation is binding on district courts in this circuit, *and* on subsequent panels of this Court, unless an intervening decision of the state's highest court has resolved the issue." *Kokins*, 621 F.3d at 1295 (quoting *Wankier v. Crown Equip. Corp.*, 353 F.3d 862, 866 (10th Cir. 2003)).

At the outset, we must clarify the scope of the legal claim at issue in this appeal. As discussed above, what remains of the Blakelys' original cause of action is their claim that USAA breached the Implied Covenant prior to January 2005 by failing, *inter alia*, to reasonably investigate the loss caused by the 2002 fire in their home. *See Berube v. Fashion Ctr. Ltd.*, 771 P.2d 1033, 1046 (Utah 1989) ("Utah has recognized that all contracts contain a covenant of good faith and fair dealing."). Utah courts have stated that "an insurer's 'implied obligation

10

of good faith performance contemplates, at the very least, that the insurer will diligently investigate the facts to enable it to determine whether a claim is valid, will fairly evaluate the claim, and will thereafter act promptly and reasonably in rejecting or settling the claim.'"[6] *Jones*, 286 P.3d at 304 (quoting *Beck v. Farmers Ins. Exch.*, 701 P.2d 795, 801 (Utah 1985)). As we noted in the Blakelys' first appeal to this court, in Utah, "the covenant of good faith and fair dealing . . . . is [not] confined to the obligations imposed by the contract itself." *Blakely*, 633 F.3d at 947 (citations omitted).

Under Utah law, "[d]amages recoverable for breach of contract include both general damages, *i.e.*, those flowing naturally from the breach, and consequential damages, *i.e.*, those reasonably within the contemplation of, or

---

[6]    USAA underscores the distinction between the implied obligation to perform an insurance contract in good faith in the "first-party" and "third-party" contexts. In a first-party case, as here, "the insured sue[s] its insurer for bad faith refusal to settle the insured's claim." *Campbell v. State Farm Mut. Auto. Ins. Co.*, 840 P.2d 130, 137 (Utah Ct. App. 1992). On the other hand, in the third-party context, "an insurer is obligated to defend the insured against claims by others." *Id.* at 138. More specifically, in the third-party context, because the insurer owes a "fiduciary duty to its insured to protect the insured's interests," *Beck*, 701 P.2d at 799, "an insured may state a cause of action in tort for an insurer's breach of its obligations," *Campbell*, 840 P.2d at 138. However, the implied contractual obligation to perform a first-party insurance contract in good faith—though implicating similar considerations as a third-party tort claim—involves a *contractual* obligation. *See Beck*, 701 P.2d at 800 ("We therefore hold in a first-party relationship between an insurer and its insured, the duties and obligations of the parties are contractual rather than fiduciary."); *see also Black v. Allstate Ins. Co.*, 100 P.3d 1163, 1169 (Utah 2004) (noting that, with respect to a first-party situation, "[w]ithout more, a breach of those implied or express duties can give rise only to a cause of action in contract, not one in tort" (alteration in original) (quoting *Beck*, 100 P.3d at 800)).

11

reasonably foreseeable by, the parties at the time the contract was made." *Beck*, 701 P.2d at 801. As noted, the Blakelys admit that, with the payment of the remaining appraisal award on December 5, 2005, USAA owes them no further amounts under the policy's express terms. *See Blakely*, 633 F.3d at 947 (noting the Blakelys' admission that "no further amounts are either claimed or owing under the policy"). Therefore, we must determine only whether the Blakelys established that they have recoverable consequential damages—i.e., damages not flowing naturally from the breach—under their claim for breach of the Implied Covenant.

Utah law recognizes "a broad range of recoverable [consequential] damages" in an action for breach of the Implied Covenant. *Beck*, 701 P.2d at 802 (noting that a "broad range" of damages "in excess of the policy limits" may be "foreseeabl[e]" and "provable" in the Implied-Covenant context, because "an insured frequently faces catastrophic consequences if funds are not available within a reasonable period of time to cover an insured loss"); *accord Machan v. UNUM Life Ins. Co. of Am.*, 116 P.3d 342, 345–46 (Utah 2005) (discussing *Beck*'s holding). Although Utah law categorizes actions for breach of the Implied Covenant as contractual disputes, Utah courts have stated that "the measure of damages . . . should 'not ignor[e] the principal reason for [other courts'] adoption

12

of the [otherwise theoretically unsound] tort approach.'"[7] *Billings v. Union Bankers Ins. Co*, 918 P.2d 461, 466 (Utah 1996) (alterations in original) (quoting *Beck*, 701 P.2d at 801). Specifically, the operative rationale is "to remove any incentive for insurers to breach the duty of good faith by expanding their exposure to damages caused by such a breach beyond the predictable fixed dollar amount of coverage provided by the policy." *Id.*

However, Utah's adoption of a doctrine expanding insurers' exposure "beyond the bare contract terms" in the Implied-Covenant context remains subject to important limitations. *Beck*, 701 P.2d at 801. More precisely, an insured is entitled only to "those [consequential damages] reasonably within the contemplation of, or reasonably foreseeable by, the parties at the time the contract was made." *Machan*, 116 P.3d at 346 (quoting *Beck*, 701 P.2d at 801). And, *Beck* teaches that "[t]he foreseeability of [consequential] damages will always hinge upon the nature and language of the [insurance] contract and the reasonable

---

[7] To be clear, Utah courts have observed that there are two approaches to measuring damages that various states apply to claims for breach of the Implied Covenant: *viz.*, the contract approach and the tort approach. *See Beck*, 701 P.2d at 801. Although Utah courts have "rejected the tort approach" in first-party insurance claims, *Billings*, 918 P.2d at 466, and even noted that "the ability of a plaintiff to recover in tort for breach of the implied covenant of good faith and fair dealing in a contract 'has the potential for distorting well-established principles of contract law,'" *Berube*, 771 P.2d at 1046 (quoting *Beck*, 701 P.2d at 799), "a first-party insurer who breaches the implied covenant by unreasonably denying the insured the benefits bargained for may be held liable for broad consequential damages foreseeably caused by the breach, damages which might include those for mental anguish and which would be closely analogous to those available in states taking a tort approach," *Billings*, 918 P.2d at 466.

13

expectations of the parties." *Beck*, 701 P.2d at 802; *see* J. Calamari & J. Perillo, CONTRACTS, § 14-5 at 548 (4th ed. 1998) (noting that "there must be an express or implied manifestation of intent to assume the risk of foreseeable consequential damages").

**B**

With these principles in mind, we turn to the theories of consequential damages that the Blakelys have advanced in their claim for breach of the Implied Covenant against USAA. In brief, the Blakelys contend that they are entitled to damages for emotional distress and aggravation of medical conditions, the appraisal and diminution in value of their home, and attorney's fees. Having surveyed Utah law, we conclude that, under the circumstances of this case, the Blakelys have failed to advance a viable theory of recoverable damages.

**1**

Turning first to the Blakelys' theory that they were entitled to consequential damages related to emotional distress and aggravation of medical conditions, they argue that the district court erred in ruling that "such damages are only available in 'rare' and 'unusual' cases." Aplts.' Opening Br. at 26 (quoting the record). In their view, Utah law only requires an insured to "convince a jury that his *damages* are 'unusual' in that they are more than the typical disappointment, frustration, and anxiety 'normally' associated with an insurance claim." *Id*. at 28 (emphasis added). In this regard, the Blakelys assert

14

that they need not "show both bad faith and that it was unusual," to survive a motion for summary judgment with respect to emotional distress damages. *Id.*

**a**

The Blakelys have asserted, as part of their theory of emotional-distress damages, that "stress related to USAA's misconduct" exacerbated Ms. Blakely's preexisting medical condition and her high blood pressure. *Id.* at 33. However, having concluded that the Blakelys' amended complaint "makes no mention of physical injuries and otherwise fails to provide notice that [the Blakelys] seek damages for physical injuries," the district court declined to consider physical injuries as a basis for an award of damages. Aplts.' App., Vol. VIII, at 1683 n.36.

USAA argues that the Blakelys failed to allege a separate theory of physical injuries, apart from their prayer for emotional-distress damages. In addressing this argument, the Blakelys point to several filings that refer to Ms. Blakely's medical condition: *viz*, an expert report attached to USAA's memorandum in support of summary judgment, which notes that stressful situations tended to aggravate Ms. Blakely's fibromyalgia; statements by the Blakelys' counsel during a pretrial conference that Ms. Blakely's fibromyalgia had been aggravated; and an assertion at the first summary-judgment hearing that Ms. Blakely's medical conditions had been aggravated.

Despite these references to Ms. Blakely's medical conditions in the summary-judgment proceedings, we cannot glean from the pleadings any

15

assertion of damages for physical injuries *separate* from the claimed emotional-distress damages. That is, the Blakelys reference medical conditions only in advancing a theory of emotional-distress damages, not in support of independent damages related to the aggravation of a medical condition. For this reason, we consider this *separate* theory of physical-injury damages to be forfeited in the district court and—given that the Blakelys do not call for application of plain-error review on appeal—to be also effectively waived. *See, e.g.*, *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1131 (10th Cir. 2011) ("[T]he failure to argue for plain error and its application on appeal—surely marks the end of the road for an argument for reversal not first presented to the district court.").

**b**

Although we consider the Blakelys' physical-injury damages theory waived, we must still assay the Blakelys' theory of emotional-distress damages under Utah's legal standard for proving consequential damages in claims for breach of the Implied Covenant. The specific legal standard that Utah applies to claims for emotional distress under the Implied Covenant is that, "in *unusual* cases, damages for mental anguish might be provable" where foreseeable given "the nature and language of the contract and the reasonable expectations of the parties." *Beck*, 701 P.2d at 802 (emphasis added). However, "damages will not be available for the mere disappointment, frustration, or anxiety normally experienced in the process of filing an insurance claim and negotiating a

16

settlement with an insurer." *Id.* at 802 n.6. In discussing this standard in an analogous (but non-insurance) setting, the Utah Supreme Court held that "a non-breaching party may recover general and/or consequential damages related to emotional distress or mental anguish arising from a breach of contract *when such damages were both a foreseeable result of the breach and explicitly within the contemplation of the parties at the time the contract was entered into*." *Carbaness v. Thomas*, 232 P.3d 486, 508 (Utah 2010) (emphasis added). The *Carbaness* court then reiterated *Beck*'s statement that "the applicability of [emotional distress or mental anguish] damages 'will always hinge upon the nature and language of the contract and the reasonable expectations of the parties.'" *Id.* (quoting *Beck*, 701 P.2d at 802).

Challenging the district court's summary-judgment decision, the Blakelys draw our attention to an interpretive dispute—namely, whether *Beck*'s limitation of "damages for mental anguish" to "*unusual* cases" envisions "unusual" conduct by the insurer (the view advanced by USAA and adopted by the district court), or "unusual" damages by the insured (the Blakelys' competing perspective). *Beck*, 701 P.2d at 802 (emphasis added); *see also* Aplts.' Opening Br. at 27–30. We need not—and thus do not—definitively opine on this interpretive dispute. That is because, even assuming *arguendo* that *Beck* speaks to unusual *damages*—the view the Blakelys have propounded—the express limitations on a consequential-

17

damages award for emotional distress squarely defeat the Blakelys' entitlement to such damages here.

Critically, *Beck* stated that, in "unusual cases," "damages for mental anguish *might* be provable" if "foreseeabl[e]" given "the nature and language of the [insurance] contract and the reasonable expectations of the parties." *Beck*, 701 P.2d at 802 (emphasis added). *Beck*, however, expressly defined those damages to exclude "the mere disappointment, frustration, or anxiety normally experienced in the process of filing an insurance claim and negotiating a settlement with an insurer." *Id.* at 802 n.6. In other words, *Beck* stressed the noncompensable nature of damages derived from the stress, strain, and aggravation inherent in any loss of property and subsequent insurance adjustment. Analogously, the Utah Supreme Court teaches us that *some* delay necessarily attends claim administration, stating that "parties to an insurance contract *should expect* that an insurance company may require a reasonable amount of time to process or investigate a claim before determining whether to pay or deny it." *Machan*, 116 P.3d at 347 (emphasis added). Accordingly, "[w]here an insurance company's breach consists only of ultimately resolving a claim incorrectly and failing to pay the insured, we may presume that any damages sustained by the insured during the initial reasonable investigation period were not caused by the breach, as these damages would have been sustained even if the insurance company had resolved the claim correctly in the insured's favor." *Id.*

18

Invoking *Beck*, the Blakelys argue that the fire *caused by Stone Touch* "disrupted" their "living circumstances," because the fire "destroyed or damaged" "[m]uch of their personal belongings and interior contents" and displaced them from "their home for many weeks." Aplts.' Opening Br. at 32. Pressing forward, the Blakelys then claim that "the actions of USAA enhanced the already existing anxiety from the fire," because USAA (1) "wanted to replace their upscale, custom furnishings with mediocre replacements"; (2) "lowballed [them during claims administration] by nearly $300,000"; and (3) investigated and underwrote their claim in a way that forced them "to live in their home before construction was completed" and to endure "the smell of smoke" "for more than three years." *Id*. From this, the Blakelys reason, their emotional distress exceeded "the disappointment or frustration 'normally' experienced during the insurance claim process." *Id.* at 31–32.

Not so. The Blakelys' claim of "*unusual*" damages relies on the prototypical "disappointment, frustration, or anxiety *normally* experienced in the process of filing an insurance claim and negotiating a settlement with an insurer"—a patently insufficient basis under *Beck* for an award of emotional-distress damages. *Beck*, 701 P.2d at 802 n.6 (emphases added). Indeed, the first two alleged breaches—USAA's effort to replace the Blakelys' "custom furnishings with mediocre replacements" and the initial "lowball[]" adjustment, Aplts.' Opening Br. at 32—express only the Blakelys' disappointment and

19

frustration with USAA's evaluative process. *Beck* forecloses precisely this sort of consequential-damages award.

The Blakelys' third source of distress—that they had to live in their home before construction was completed and had to endure the smell of smoke for more than three years—fares no better in advancing their cause. Although the Blakelys take exception to living in an unrepaired house smelling strongly of smoke, they offer no explanation for their three-year delay in invoking the appraisal procedure authorized by the parties' policy. As discussed above, Utah law makes clear that damages under the Implied Covenant must *at least* be foreseeable within "the nature and language of the contract and the reasonable expectations of the parties." *Beck*, 701 P.2d at 802. Because the policy here expressly authorized the Blakelys to demand an appraisal—*viz.*, to invoke a contractual mechanism clearly designed to bring loss-payment disputes to a *reasonably prompt* conclusion—we see nothing foreseeable about their purported, delay-related distress, which allegedly stemmed from the Blakelys' need to occupy an unrepaired home that was permeated with the smell of smoke for three years.

Furthermore, although the cases the Blakelys cite—e.g., *Kewin v. Mass. Mut. Life Ins. Co.*, 295 N.W.2d 50, 53 (Mich. 1980); *Stewart v. Rudner*, 84 N.W.2d 816, 824 (Mich. 1957); and *Lamm v. Shingleton*, 55 S.E.2d 810, 813 (N.C. 1949)—support an award of damages for emotional distress when the failure to perform contractual obligations "concerns matters of mental concern

20

and solicitude," Aplts.' Opening Br. at 31, the Blakelys provide no direct legal support for an award of emotional-distress damages in the context of an insurance policy that provides, as here, a basis to enforce contractual obligations against the insurer (i.e., the appraisal provision). Again, the Blakelys do not explain their delayed invocation of the appraisal clause—and when they did finally invoke it, USAA *fully* compensated them for the damage to their home in accordance with that procedure.

In sum, we see no error in the district court's conclusion that the Blakelys failed to demonstrate emotional-distress damages. Even assuming *arguendo* that *Beck*'s focus is on "unusual" damages (as opposed to "unusual" insurer conduct), the Blakelys have not presented the sort of "unusual case[]" that *Beck* contemplates. *See Beck*, 701 P.2d at 802.[8]

**2**

---

[8] The Blakelys also argue that they are entitled to damages for economic loss and lost income because they "had to spend their personal time [performing remedial work], resulting in lost income." Aplts.' Opening Br. at 45. They assert that the district court conflated *benefits* and *damages* when it noted that "[t]he policy does not provide personal injury protection or other first-party losses for lost wages or income that are typically a part of other types of insurance policies (e.g., auto insurance)." Aplts.' App., Vol. VIII, at 1687. Although the Blakelys are correct that consequential damages may exceed contract benefits, *see Billings*, 918 P.2d at 467, they must still allege and develop facts showing that USAA's alleged breach of the Implied Covenant caused the consequential loss and that the loss was foreseeable within the nature of the contract, *see Beck*, 701 P.2d at 802. The Blakelys have not made this showing.

21

The Blakelys next argue that "had USAA fulfilled its obligations to fairly and timely investigate, evaluate, and pay, [they] would not have been forced to invoke the insurance policy's appraisal policy, which cost them significant amounts of money." Aplts.' Opening Br. at 39. At the outset, it is clear that Utah law forbids contracts from abrogating relief appropriately available under the Implied Covenant. *See Christiansen v. Farmers Ins. Exch.*, 116 P.3d 259, 261–62 (Utah 2005) ("A claim for breach of the implied covenant of good faith and fair dealing . . . is based on judicially recognized duties not found within the four corners of the contract. These duties, unlike the duties expressly stated in the contract, are not subject to alteration by the parties." (citation omitted)). However, relief under the Implied Covenant must be "'consistent with the agreed common purpose' of the contract." *Id.* at 262 (quoting *St. Benedict's Dev. Co. v. St. Benedict's Hosp.*, 811 P.2d 194, 200 (Utah 1991)).

As the district court explained, the Blakelys "have not argued that [USAA] did not pay the cost of its own appraiser or split the other expenses of the appraisal and the compensation of the umpire." Aplts.' App., Vol. VIII, at 1689. The appraisal clause provided that "[e]ach appraiser will be paid by the party selecting that appraiser," *id.* Vol. VI, at 1226, and that "[o]ther expenses of the appraisal and the compensation of the umpire will be equally paid by you and us," *id.* Because the Blakelys argue only that they should be compensated for the costs of the appraisal, in order to grant the Blakelys' requested relief, the district

22

court would have had to override the express terms of the policy (which, as noted, allocated appraisal-related expenses between the parties). Put another way, the Blakelys are, in effect, seeking compensatory damages for the cost of the appraisal, not consequential damages for a breach of the Implied Covenant. Granting such damages on appeal would require us to override an express provision of the policy. For this reason, the Blakelys' prayer for consequential damages with respect to the appraisal clause must fail.

**3**

The Blakelys next argue that they are entitled to be compensated for attorney's fees incurred as a result of (1) their suit against Stone Touch (the contractor that caused the fire), (2) their invocation of the appraisal clause, and (3) the litigation expenses related to the instant case. The district court disagreed, ruling that it was not "foreseeable that Plaintiffs [would] go outside th[e] methodology [of the policy and appraisal clause] and instead sue Stone Touch," *id.* Vol. VIII, at 1688, and that the appraisal clause already allocated costs associated with its invocation under the express terms of the policy, *see id.* at 1689. The district court further explained that "the fees and costs in the instant case are not stand-alone damages sufficient to support a breach of the implied covenant claim." *Id.*

It is beyond peradventure that "[u]nder Utah law, plaintiffs may recover attorney fees if they are successful in pursuing a first-party bad faith suit against

23

their insurer." *Campbell v. State Farm Mut. Auto. Ass'n*, 65 P.3d 1134, 1168 (Utah 2001), *vacated on other grounds by* 538 U.S. 408 (2003); *accord Gibbs M. Smith, Inc. v. U.S. Fidelity & Guar. Co.*, 949 P.2d 337, 344 (Utah 1997) ("[I]n first-party actions, attorney fees are recoverable where there has been a breach of the implied covenant of good faith and fair dealing which inheres in every insurance contract."); *see also Billings*, 918 P.2d at 468 ("Attorney fees may be recoverable as consequential damages flowing from an insurer's breach of either the express or implied terms of an insurance contract."). "However, as consequential damages, attorney fees are recoverable only if they were 'reasonably within the contemplation of, or reasonably foreseeable by, the parties at the time the contract was made.'" *Billings*, 918 P.2d at 486 (quoting *Beck*, 701 P.2d at 801). And, "[t]he foreseeability of any such damages will always hinge upon the nature and language of the contract and the reasonable expectations of the parties." *Beck*, 701 P.2d at 802. In this case, we cannot conclude that additional attorney's fees would have been foreseeable to the parties, because the Blakelys only invoked the appraisal clause after filing suit against Stone Touch and the policy's express terms clearly spelled out the allocation of the resulting appraisal costs.

As for the attorney's fees related to the instant case, the Blakelys are correct that they would be entitled to a fee award if they were adjudicated the

24

prevailing party. *See Highland Constr. Co. v. Stevenson*, 636 P.2d 1034, 1038 (Utah 1981) ("In any action brought upon either of the bonds provided herein . . . the prevailing party, upon each separate cause of action, shall recover a reasonable attorney's fee to be taxed as costs." (alteration in original) (quoting Utah Code Ann. § 14–1–8 (1953))). However, as the district court noted, this rule does not provide an independent cause of action for attorney's fees, but rather allows a fee award "upon each separate cause of action." *Id.* (quoting Utah Code. Ann. § 14–1–8). Therefore, to be entitled to a fee award in the instant case, the Blakelys must prevail in advancing a theory of damages under the Implied Covenant independent of attorney's fees.

Because the Blakelys have not done so, an attorney's fees award for costs incurred in litigating the instant case would not be proper. We are equally unpersuaded that attorney's fees incurred in litigating the Stone Touch case and in invoking the appraisal clause are warranted, because those costs and fees were avoidable or accounted for under the express terms of the policy, and the Blakelys have not offered an explanation to the contrary.

The Blakelys nonetheless argue that they would be entitled to a fee award if they prevailed in a claim for nominal damages. *See* Aplts.' Opening Br. at 44; *see, e.g.*, *Turtle Mgmt., Inc. v. Haggis Mgmt., Inc.*, 645 P.2d 667, 670 (Utah 1982) ("Nominal damages are recoverable upon a breach of contract if no actual or substantial damages resulted from the breach or if the amount of damages has not

25

been proven."); *accord Holmes Dev., LLC v. Cook*, 48 P.3d 895, 906 (Utah 2002) (finding that the plaintiff's recovery would be "limited to nominal damages" because the defendant "cured the breach" before the plaintiff "incurred actual damages"). However, the Blakelys stumble at the outset because they have not advanced a theory of nominal damages independent of their other damages theories. More specifically, even assuming *arguendo* that a prevailing party in a suit for nominal damages under the Implied Covenant would be entitled to attorney's fees—a proposition the Blakelys do not support with any legal authority—the party would still be obliged to advance a theory of nominal damages. And, as noted, the Blakelys have not done so. Thus, we conclude that the Blakelys have made no showing qualifying them for any attorney's fees.

**4**

Finally, we address the Blakelys' entitlement to consequential damages for the alleged diminution in their property's value. During the final pretrial hearing on April 23, 2013, the Blakelys' counsel and the district court engaged in the following colloquy concerning the diminution-in-value claim:

> Court: Now, does that come in – well, now, you talk about devaluation of the home. I thought the home was paid for by the express contract[.]
>
> Counsel: The reason why [the Blakelys] are asserting a claim for the devaluation in their home is based upon the following. Had USAA paid the appropriate amount, done their investigation, properly evaluated and timely paid, they would not have incurred the

26

> attorney's fees and litigation expenses, both associated with the Stone Touch as well as the appraisal. And because of the attorney's fees and expenses in that regard, they did not have sufficient money to replace the floor joists and the other items that needed to be done.

Court: That was part of the adjustment amount.

Counsel: Pardon me?

Court: They were paid for that. The adjustment amount paid for the house.

Counsel: Correct. But the consequential damages under the bad faith claim is that because they incurred the attorney's fees and expenses, that was not available to them to –

Court: They were paid for that. The fact that they didn't do it is telling in two ways. It's one thing to talk about attorney's fees and quite another thing to talk about a house that you say is diminished because they didn't do what they were paid to do. That's just gone. I won't deal with the devaluation of the home.

Aplts.' App., Vol. VIII, at 1575–76 (capitalization omitted) (Tr. of Final Pretrial Hr'g, dated Apr. 23, 2013). Thus, the Blakelys contended that USAA's allegedly bad-faith adjustment required them to incur "attorney's fees and [litigation] expenses" to obtain full payment on their insurance claim, leaving them without "sufficient" funds to perform repairs, even after being paid the appraisal amount; that, in turn, resulted in a devaluation in their home's fair market value. *Id.* at 1576; *see also* Aplts.' Reply Br. at 26 ("The Blakelys have alleged that, because

27

of USAA's delays and other bad faith, they had to use the appraisal payment to pay down debt they had incurred because of that bad faith, such as the appraisal and litigation expenses discussed above.  They were left with insufficient funds to make needed repairs, as a result of which (in addition to the length of time itself to that point) the value of the house diminished.").  The district court effectively dismissed this claim during the final pretrial hearing.[9]  As noted, the court said that the Blakelys "were paid for that. . . .  [T]hey didn't do what they were paid to do. . . .  I won't deal with the devaluation of the home."  Aplts.' App., Vol. VIII, at 1576 (capitalization omitted).

On appeal, the Blakelys challenge the district court's reasoning, arguing that the district court erroneously "assumed that the appraisers' determination of policy benefits barred the Blakelys' claims for consequential damages arising from the untimely payment of those benefits."  Aplts.' Opening Br. at 48.  Citing *Miller v. USAA Casualty Insurance Co.*, 44 P.3d 663 (Utah 2002), the Blakelys contend instead that Utah law "quite clear[ly]" permits this very claim for consequential damages, e.g., a devaluation claim arising from the untimely payment of insurance benefits.  Aplts.' Opening Br. at 48.  For the reasons that follow, we conclude that the Blakelys' diminution-in-value claim is untenable.

---

[9]  We view the district court's pretrial exclusion of the Blakelys' diminution-in-value claim as an effective dismissal.  *See Blakely*, 633 F.3d at 949 (construing similar action by the district court as a "dismissal").

We first introduce *Miller*, then explain our reasoning. In *Miller*, the Miller family filed an insurance claim with USAA after their basement water heater burst, and USAA retained an independent adjuster to assess the damage. 44 P.3d at 667. Dissatisfied with the assessment, the Millers filed suit against USAA asserting a contractual claim for the recovery of physical damage to their home, and extra-contractual claims for, among other things, emotional distress and loss of use. USAA moved to dismiss, arguing that the parties' appraisal clause—in all material respects, the same one implicated here—required that the parties' dispute "be resolved via the appraisal process." *Id.* at 668 (quoting the record). Reasoning that the "parties [were] bound by contract to settle the dispute in th[e] case by appraisal," the trial court "dismissed *all* of the Millers' claims, including the extra-contractual claims, because USAA invoked the appraisal clause of the insurance contract." *Id.* at 675 (first alteration in original). After the appraisal panel declined "to embark on the laborious task of analyzing the extra-contractual claims"—but did reach an award on their contractual claims, *id.* at 669—the Millers proceeded to raise their extra-contractual claims in a separate civil action. The trial court in that separate civil action, however, "dismiss[ed] the extra-contractual claims," reasoning that the earlier dismissal "constituted a final judgment on the merits and, thus, those claims were precluded by res judicata and the appraisal agreement." *Id.* at 668–69.

29

On appeal, the Utah Supreme Court considered the Millers' argument that the trial courts' treatment of their extra-contractual claims deprived them of due process. As part of that inquiry, the *Miller* court noted that the appraisal clause required only that the appraisers "set the 'amount of loss,'" meaning that "the clause necessarily applie[d] only to property damage claims." *Id.* at 676. The court then explained that the "amount of loss as used in the appraisal clause refers to the value of the injury or damage for which the Millers may seek indemnity," and contrasted contractual claims over that "amount of loss" with extra-contractual claims that do not "pertain to the amount of loss under the insurance contract," *id.*

In contesting the district court's order, the Blakelys seize on *Miller* to rebut any suggestion that their "amount of loss" payment under the appraisal clause precluded them, as a matter of law, from recovering consequential damages under a diminution-in-value theory. We do not question that *if* the district court had predicated its dismissal on this legal ground, its ruling would, at the very least, have been in tension with *Miller*. But we do not interpret the district court's order that way. In response to the Blakelys' argument, the district court held: "They were paid for that. . . . It's one thing to talk about attorney's fees and *quite another thing to talk about a house that you say is diminished because they didn't do what they were paid to do*." Aplts.' App., Vol. VIII, at 1576 (emphases added) (capitalization omitted). In other words, the district court simply reasoned that

30

the Blakelys' own conduct—i.e., failing to allocate the money from the appraisal

process to restoration and repairs, as intended—caused any dimunition in value,

*see id.*, *not* that the appraisal award itself precluded, as a matter of law, the

recovery of consequential damages under a diminution-in-value theory.

Accordingly, we perceive no conflict between the district court's rationale and

*Miller*.[10]

Nor, for that matter, can we conclude that these sorts of self-inflicted

injuries would have been foreseen by the parties or within their reasonable

[10] In arguing to the contrary, the Blakelys refer to remarks made during an earlier pretrial hearing on March 31, 2008. *See* Aplt.'s Reply Br. at 27. There, they claim, the district court expressed a view that "the 'measure' of the Blakelys' damage [was] the amount awarded in the property damage appraisal." *Id.* Our reading of the relevant aspect of the pretrial hearing transcript reveals some ambiguity in the district court's remarks regarding the legal effect of the appraisal award. *See* Aplts.' App., Vol. VII, 1360–61 (Tr. of Pretrial Hr'g, dated Mar. 31, 2008). Nonetheless, even if we interpreted the court's comments in the 2008 pretrial hearing as the Blakelys do, we would recognize our focus should be on the rationale the court articulated in dismissing the diminution-of-value claim more than five years later. That is because district courts are not encouraged or obliged to adhere to prior interlocutory rulings—much less prior comments—if they conclude that those rulings (or comments) are erroneous and would result in reversal. *See, e.g.*, *Major v. Benton*, 647 F.2d 110, 112 (10th Cir. 1981) ("When a lower court is convinced that an interlocutory ruling it has made is substantially erroneous, the only sensible thing to do is to set itself right to avoid subsequent reversal."); *see also Unioil v. Elledge (In re Unioil, Inc.)*, 962 F.2d 988, 993 (10th Cir. 1992) ("Only final judgments may qualify as law of the case; where a ruling remains subject to reconsideration, the doctrine is inapplicable."); *United States v. Bettenhausen*, 499 F.2d 1223, 1230 (10th Cir. 1974) ("The rule of the law of the case does not apply unless there is a final judgment that decided the issue. . . . The ruling in question here could have been reconsidered by the trial court and was not final." (citations omitted)). And the district court's rationale supporting its dismissal five years after the 2008 pretrial hearing do not evince any conflict with *Miller*.

31

expectations, as *Beck* requires. As articulated in *Beck*, Utah law limits an award of consequential damages to "those [harms] reasonably within the contemplation of, or reasonably foreseeable by, the parties at the time the contract was made." *Beck*, 701 P.2d at 801. The harms at issue here—that effected the alleged diminution in value of the Blakelys' property—do not satisfy this standard because USAA and the Blakelys could not have reasonably contemplated or foreseen that the Blakelys would be the primary actors in imposing these harms on themselves, especially when doing so involved the Blakelys' decision to forgo contractual remedies. More specifically, it was *the Blakelys* who elected to pursue litigation against Stone Touch in lieu of an early contractual appraisal process, and *the Blakelys* who allocated, in significant part, the appraisal payout to litigation rather than restoring their home to its original value, as intended under the policy. In short, because the Blakelys' own conduct engendered much of the claimed delay in restoring their home and the resulting (ostensible) diminution in value, we discern no basis to conclude that their diminution-in-value claim would have been "reasonably within the contemplation of, or reasonably foreseeable by, the parties." *Id.* Thus, their diminution-in-value claim fails under *Beck*.

Finally, even if the Blakelys could overcome these deficiencies, we detect an alternative ground for affirmance. *See Elwell v. Byers*, 699 F.3d 1208, 1213 (10th Cir. 2012) ("We can affirm a lower court's ruling on any grounds

32

adequately supported by the record, even grounds not relied upon by the district court."). Specifically, regardless of the substantive merits of their diminution-in-value claim, the Blakelys do not directs us—as USAA observes—to any record evidence of the alleged diminution in value. Rather, they cite an irrelevant portion of USAA's briefing before the district court, and then assert, without actual evidentiary support, that "the burned joists, floor, and other fire/smoke damage . . . caused a significant devaluation in the home's fair market value." Aplts.' Opening Br. at 17. That is not enough. On this alternative ground too, we find the diminution-in-value claim untenable. In sum, the Blakelys cannot prevail on appeal on their diminution-in-value claim. We uphold the district court's judgment regarding this claim.

**************

In sum, we see no viable footing for the recovery of consequential damages, nor have the Blakelys advanced a cognizable theory for nominal damages. Accordingly, the Blakelys cannot prevail on their claim for breach of the Implied Covenant and are not entitled to an award of attorney's fees and costs.

33

## III

For the foregoing reasons, we **AFFIRM** the district court's grant of summary judgment in favor of the Defendant-Appellee, USAA.

ENTERED FOR THE COURT

Jerome A. Holmes
Circuit Judge

*Blakely v. USAA Casualty Insurance Co.*, No. 15-4059
**BACHARACH**, J., dissenting.

I respectfully dissent. Unlike the majority, I believe that a reasonable fact-finder, guided by applicable Utah law, could find that as a result of the defendant's bad faith, the Blakelys suffered damages for

- emotional distress,

- lost income,

- appraisal expenses and attorney fees, and

- other attorney fees.

I also believe that the Blakelys could at least reasonably argue that the recoverable damages included the diminution in the value of their house. As a result, I would reverse the district court's rulings.

## I.    The Blakelys allegedly suffered damages from breach of the implied covenant of good faith and fair dealing.

Plaintiffs Mr. Alan Blakely and Mrs. Colelyn Blakely had a home insurance policy with Defendant USAA Casualty Insurance Company. In August 2002, a home fire caused significant damage to their home, leading the Blakelys to submit an insurance claim to USAA.

The Blakelys were dissatisfied with USAA's response, believing that USAA had not paid enough for the fire damage, had refused to make necessary repairs, had avoided communication, and had improperly delegated tasks to non-adjusters. This dissatisfaction led the Blakelys to take matters into their own hands, making repairs at their own expense,

suing the contractor responsible for the fire (Stone Touch), and invoking the insurance policy's option for an appraisal procedure. The appraisal procedure led to a determination that USAA had substantially underpaid the Blakelys. Complying with this determination, USAA paid more to the Blakelys; and the parties agree that USAA has now paid everything required under the express terms of the policy.

But the Blakelys allege that USAA had acted improperly earlier, leading to this suit, which comes to us for the third time. *See Blakely v. USAA Cas. Ins. Co.*, 633 F.3d 944 (10th Cir. 2011); *Blakely v. USAA Cas. Ins. Co.*, 500 F. App'x 734 (10th Cir. 2012). The only remaining claim is USAA's alleged breach of the insurance policy's implied covenant of good faith and fair dealing. On this claim, the Blakelys assert five theories of damages:

1. injuries from emotional distress

2. loss of income

3. expenses and attorney fees from the appraisal procedure

4. other attorney fees and

5. diminution in the value of their house.[1]

---

[1] The Blakelys also appear to assert a sixth theory: physical damages from the exacerbation of their preexisting medical conditions. As the majority explains, however, the Blakelys never presented this theory in district court as a stand-alone claim. Maj. Op. at 15-16. Therefore, I consider such damages as encompassed within the Blakelys' emotional-distress damages.

2

At a pretrial conference, the district court dismissed the Blakelys' "diminution-in-value theory" as legally frivolous. USAA then moved for summary judgment, asserting that the Blakelys could not legally recover damages on their four other theories. The district court agreed and granted summary judgment to USAA on these four theories. The majority affirms, but I would reverse.

## II.  Legal Background

In this diversity case, we apply Utah substantive law. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). In applying Utah law, we follow the opinions of Utah's Supreme Court. *Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 665-66 (10th Cir. 2007). If the Utah Supreme Court has not issued a controlling opinion, we predict what the court would do, drawing guidance from Utah's other courts, appellate opinions in other states with similar legal principles, federal district court opinions interpreting Utah law, and "'the general weight and trend of authority.'" *Id*. at 666 (quoting *MidAmerica Constr. Mgmt., Inc. v. MasTec N. Am., Inc.*, 436 F.3d 1257, 1262 (10th Cir. 2006)).

### A.  Utah's Implied Covenant of Good Faith and Fair Dealing

All contracts in Utah contain an implied covenant of good faith and fair dealing. *Prince v. Bear River Mut. Ins. Co.*, 56 P.3d 524, 533 (Utah 2002). Under this covenant, the parties promise not to intentionally injure

3

one another's right to the fruits of the contract. *Id.* To keep this promise, the parties must act consistently with the contract's common purpose and the parties' justified expectations. *Id.* In the insurance context, this means that the insurer must reasonably investigate, evaluate, and resolve an insured's claim. *Jones v. Farmers Ins. Exch.*, 286 P.3d 301, 304 (Utah 2012).

## B. Consequential Damages for Breaching the Implied Covenant

A party who breaches the implied covenant of good faith and fair dealing can incur liability for consequential damages. *Machan v. UNUM Life Ins. Co. of Am.*, 116 P.3d 342, 345 (Utah 2005). These damages are not confined to the parties' express contractual obligations. *Id.*

To recover such damages, the non-breaching party must prove that the particular damages were foreseeable when the parties contracted. *Mahmood v. Ross*, 990 P.2d 933, 938 (Utah 1999). Foreseeability hinges on the nature and language of the contract and on the parties' reasonable expectations. *Machan*, 116 P.3d at 346.

Because damages lie "'within the jury's province,'" the existence and amount of damages constitute questions of fact. *Lopez v. United Auto. Ins. Co.*, 274 P.3d 897, 905 (Utah 2012) (quoting *Judd v. Drezga*, 103 P.3d 135, 144 (Utah 2004)). In any given case, however, the court must "conform the jury's findings to applicable law." *Judd*, 103 P.3d at 144. Put otherwise, the jury makes factual findings against the backdrop of Utah law.

4

This backdrop includes guidance from the Utah Supreme Court on the availability of damages for emotional distress. In an "'ordinary commercial contract,'" emotional-distress damages are foreseeable only if the damages were both "a foreseeable result of the breach of contract and *explicitly* within the contemplation of the parties." *Cabaness v. Thomas*, 232 P.3d 486, 508 (Utah 2010) (emphasis in original) (quoting *Stewart v. Rudner*, 84 N.W.2d 816, 823 (Mich. 1957)).

In the insurance context, however, explicit contemplation is not required. Insurance is purchased not only for compensation of a loss, but also to "'provide peace of mind for the insured.'" *Id.* at 507 (quoting *Beck v. Farmers Ins. Exch.*, 701 P.2d 795, 802 (Utah 1985)). Such peace of mind is a fruit of the contract that "the insured has bargained for." *Machan*, 116 P.3d at 345. Put otherwise, an insured's mental wellbeing is always on the minds of the contracting parties.

But not every type of an insured's mental distress is foreseeable. The Utah Supreme Court has held that emotional-distress damages are foreseeable only in "unusual cases." *Beck*, 701 P.2d at 802. The court did not expressly define an "unusual" case, but indicated that an insurer could not foresee the need to compensate for the "disappointment, frustration, or anxiety" that an insured "normally" experiences in trying to obtain insurance proceeds from the insurer. *Id.* at 802 n.6; *see Cabaness*, 232 P.3d at 507-08. It appears, then, that emotional-distress damages are "unusual"

5

if these damages extend beyond the "normal[]" reactions of disappointment, frustration, or anxiety. *See Beck*, 701 P.2d at 802 n.6; *see also Machan*, 116 P.3d at 346 (suggesting that an insured could be compensated for the exacerbation of medical conditions caused by emotional stress (citing *Acquista v. N.Y. Life Ins. Co.*, 730 N.Y.S.2d 272, 276 (N.Y. App. Div. 2001))); *Billings v. Union Bankers Ins. Co.*, 918 P.2d 461, 467-68 (Utah 1996) (affirming an award of emotional-distress damages when the insured's lack of a complete recovery resulted in great mental distress).

To summarize, for an insured to recover emotional-distress damages, the damages must be unusual and foreseeable.

### III. Summary Judgment Rulings: Emotional Distress, Lost Income, Expenses and Attorney Fees for the Appraisal Procedure, and Other Attorney Fees

We apply these legal principles in reviewing the summary-judgment rulings. These rulings rejected the availability of damages for emotional distress, lost income, use of the appraisal procedure, and attorney fees unrelated to the approval procedure. I would reverse these rulings.

#### A. Standard of Review

We engage in de novo review, viewing the evidence and drawing all reasonable inferences in favor of the Blakelys. *Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1251 (10th Cir. 2015). Summary judgment was proper only if

- there was no genuine dispute regarding a material fact and

- USAA was entitled to judgment as a matter of law.

*Id.*

**B.     The district court improperly concluded that the Blakelys are not entitled to consequential damages for emotional distress.**

The district court concluded that the Blakelys had failed to prove that their emotional distress was unusual or foreseeable. This conclusion was erroneous for two reasons:

1.     The Blakelys presented evidence of damages for emotional distress surpassing the mere "disappointment, frustration, or anxiety" that commonly arises when seeking insurance proceeds.

2.     When entering the insurance agreement, the parties could foresee emotional-distress damages arising from USAA's bad faith, as this agreement was meant to provide security and peace of mind by insuring the Blakelys' most intimate space—their home.

First, Mr. and Mrs. Blakely's injuries are "unusual" and would be compensable under Utah law. For example, the Blakelys presented evidence of the development and exacerbation of medical conditions resulting from stress created by USAA's alleged bad faith. *See Machan*, 116 P.3d at 346 (suggesting that an insured could be compensated for stress-induced exacerbation of medical conditions).

For example, Mr. Blakely presented evidence of high blood pressure caused by his interactions with USAA. *See* Appellants' App'x, vol. II at

7

353; Appellants' App'x, vol. VII at 1318; Appellants' App'x, vol. VIII at 1614. Mrs. Blakely similarly presented evidence of depression, fibromyalgia, and headaches from the "continued stress" created by USAA's conduct. Appellants' App'x, vol. I at 176; Appellants' App'x, vol. VI at 1138; *see also* Appellants' App'x, vol. II at 353 (alleging that the conflict with USAA "seriously progressed" Mrs. Blakely's physical conditions). These injuries are not the result of typical "disappointment, frustration, or anxiety" from dealing with an insurance company, and the district court erred in concluding otherwise.[2]

The Blakelys also presented evidence involving heightened distress when they had to leave their home for an extended period and return before the repairs were complete. This evidence indicated that the Blakelys needed to return too early, exposing them to the sight of fire damage and the smell of smoke, which created distress that was beyond ordinary. Appellant's App'x, vol. II at 353, 371.

Second, the district court erred by concluding that the contracting parties could not have foreseen damages for emotional distress. The Utah

---

[2]    In the alternative, USAA contends that the Blakelys lack evidence of exacerbation of their medical conditions. Appellee's Resp. Br. at 19-22. The Blakelys maintain otherwise and point out that this contention was not argued as a ground for summary judgment. Appellants' Reply Br. at 12. Assuming that USAA properly raised this contention, I would conclude that a reasonable fact-finder could infer exacerbation of medical conditions from USAA's handling of the claim. *See id.* at 13-15 (providing citations to the summary-judgment record).

8

Supreme Court has explained that insurance is purchased to "provide peace of mind." *Beck v. Farmers Ins. Exch.*, 701 P.2d 795, 802 (Utah 1985). And a breach of the implied covenant of good faith for a contract that is "specifically directed toward matters of mental concern and solicitude" is likely to result in damages for emotional distress and mental anguish. *Cabaness v. Thomas*, 232 P.3d 486, 508 (Utah 2010).[3]

Not all damages are foreseeable when an insurer violates an insurance policy in bad faith. *See Beck*, 701 P.2d at 802 (noting that in unusual cases, emotional-distress damages "might be provable"). But this was not just any insurance policy; this was insurance that covered the insureds' home. *See Hargrave v. Leigh*, 273 P. 298, 301 (Utah 1928) (noting that the "natural consequence" for being forced to leave one's home can include "mental anguish and suffering"). A fact-finder might reasonably find that USAA could foresee that its conduct would directly affect the Blakelys' ability to enjoy the refuge and solace of their home,

---

[3] The district court characterized *Cabaness* as a clarification or modification of *Beck*, creating a requirement for explicit contemplation of emotional-distress damages at the time of the contract. *See Blakely v. USAA Cas. Ins. Co.*, No. 06-cv-00506, 2015 WL 1522752, at *9 (D. Utah Apr. 2, 2015) (stating that *Cabaness* "clarified, or at least modified" *Beck*, and holding that emotional-distress damages were not foreseeable in part because "there is no evidence that emotional damages . . . were contemplated explicitly by the parties"). But, *Cabaness* discussed explicit contemplation in the context of an "ordinary commercial contract," as opposed to insurance contracts, which always contemplate an insured's peace of mind. *See* Part II(B), above.

9

resulting in the sort of emotional distress that the Blakelys allegedly suffered. *See Orkin Exterminating Co. v. Donavan*, 519 So. 2d 1330, 1333 (Ala. 1988) ("The breach of a contract . . . which affects the habitability of a house, can reasonably be foreseen to affect the solicitude and well-being of the occupants."); *see also* John A. Sebert, Jr., *Punitive and Nonpecuniary Damages in Actions Based Upon Contract: Toward Achieving the Objective of Full Compensation*, 33 UCLA L. Rev. 1565, 1589 & n.88 (1986) (explaining that courts permit damages for emotional distress in connection with contracts involving a person's home, while courts have disallowed damages for emotional distress in commercial contexts).

The Blakelys' policy specifically addressed their ability to live in their house. For example, USAA promised to insure any additional living expenses if the Blakelys' house was "not fit to live in . . . so that [the Blakelys could] maintain [their] normal standard of living." Appellants' App'x, vol. VI at 1233. And the policy specifically disclaimed coverage for the Blakelys' commercial activities conducted on the premises, providing further evidence that the insurance policy was specifically directed toward matters of mental concern and solicitude. *See id.* at 1216, 1228 (excluding insurance coverage for "business" or "rental" property and activities).

For this reason, a material fact-question existed on whether USAA could have foreseen the availability of emotional-distress damages. The Blakelys presented evidence suggesting more than simple disappointment, frustration or anxiety; and the parties' focus on the intimate space of a home could have led USAA to foresee damages for emotional distress. Thus, the district court erred in granting summary judgment to USAA on the claim for emotional-distress damages.

**C.    The district court erred in granting summary judgment to USAA on the Blakelys' claims for consequential damages from (1) lost income, (2) expenses and attorney fees incurred in the appraisal procedure, and (3) attorney fees unrelated to the appraisal procedure.**

The summary-judgment ruling also addressed three other forms of consequential damages: (1) lost income, (2) expenses and attorney fees from using the optional appraisal procedure, and (3) other attorney fees. For the first two—lost income and appraisal damages—the district court held that the damages were unavailable because they were unforeseeable. I respectfully disagree.

For the third form of damages—attorney fees unrelated to the appraisal—the district court divided the damages into two subcategories:

1.    attorney fees from the Stone Touch litigation and

2.    attorney fees from the present litigation.

For the first subcategory, the district court held that attorney fees were not reasonably foreseeable. For the second subcategory, the court concluded

11

that the Blakelys could not recover such fees given the absence of any other predicate damages. I believe that the district court erred with regard to both subcategories.

1. **The fact-finder might reasonably infer that USAA could foresee the need to compensate for lost income upon a breach of the implied covenant of good faith and fair dealing.**

The district court concluded that the Blakelys' home insurance policy did not cover lost income. According to the district court, the absence of express coverage for lost income prevented USAA from foreseeing this type of loss. But the district court mistook the nature of its inquiry. "[C]onsequential damages that an insured might foreseeably incur due to an insurance company's breach of the implied covenant of good faith may encompass 'losses well in excess of the policy limits, such as for a home . . . .'" *Machan v. UNUM Life Ins. Co. of Am.*, 116 P.3d 342, 345-46 (Utah 2005) (quoting *Beck v. Farmers Ins. Exch.*, 701 P.2d 795, 802 (Utah 1985)). The Blakelys allegedly suffered lost income because they had spent personal time repairing their home.

The fact-finder might reasonably find that USAA could foresee the need to compensate for lost income upon a breach of the implied covenant of good faith and fair dealing. And foreseeability is a question of fact, which generally cannot be decided on summary judgment. *See Rees v. Albertson's, Inc.*, 587 P.2d 130, 133 (Utah 1978) (stating that causation

12

requires reasonable foreseeability, which involves a factual question "generally for the fact-trier, court or jury, to determine"). Thus, USAA was not entitled to summary judgment on the claim for lost income.

> **2.    Appraisal-related expenses and attorney fees could be recoverable upon a breach of the implied covenant of good faith and fair dealing.**

The district court also rejected the Blakelys' claims involving expenses and attorney fees from using the appraisal procedure, reasoning that the insurance policy defined who would pay. But the Blakelys presented evidence showing that they had resorted to the appraisal procedure only because USAA had breached the implied covenant of good faith and fair dealing.

This evidence suggests that the Blakelys would not have needed to use the appraisal procedure if USAA had acted in good faith. The appraisal procedure was only an option, not a requirement, in the event of a dispute. *See* Appellants' App'x, vol. VI at 1226 ("[E]ither party *can* demand . . . appraisal . . . ." (emphasis added)); *id.* at 1235 (noting that USAA will pay for losses if the parties either reach an agreement, go through appraisal, or receive "entry of a final judgment"). A fact-finder could reasonably find that the policy had been designed to allocate expenses for reasonable disputes, not disputes created by USAA's breach of the implied covenant of good faith and fair dealing. *See Beck v. Farmers Ins. Exch.*, 701 P.2d 795, 801 (Utah 1985) ("When an insurer has breached [the implied] duty

13

[of good faith], it is liable for damages suffered in consequence of that breach.").

Nonetheless, USAA argues that the Blakelys waited too long to invoke the appraisal procedure. Appellee's Resp. Br. at 22. The majority similarly states that the Blakelys "offer no explanation for their three-year delay in invoking the appraisal procedure" and characterizes the appraisal damages as "delay-related distress." Maj. Op. at 20.

But the appraisal procedure was optional, and the fact-finder could reasonably find that the Blakelys had a good reason for delaying appraisal. As we said in a prior appeal, the Blakelys waited because "they had been trying to pursue their claims against [Stone Touch]." *Blakely v. USAA Cas. Ins. Co.*, 500 F. App'x 734, 737 (10th Cir. 2012). And the Blakelys presented evidence indicating that they had to sue Stone Touch only because USAA had allegedly acted in bad faith. In these circumstances, the fact-finder could justifiably find that the Blakelys had acted reasonably in the face of USAA's resistance, pursuing the tortfeasor that caused the fire and then resorting to the appraisal procedure.

In my view, a genuine, material factual dispute exists on the recoverability of the Blakelys' expenses and attorney fees incurred in the appraisal procedure.[4]

---

[4]     USAA also asserts that it acted in good faith because it "did not deny the appraisal request." Appellee's Resp. Br. at 23. But USAA's

### 3. The parties' agreement may have contemplated other attorney fees.

The Blakelys also claimed attorney fees from the Stone Touch litigation and from the present litigation. The district court rejected these claims.

For attorney fees from the Stone Touch litigation, the district court reasoned that attorney fees were not foreseeable given the policy's discussion of the appraisal procedure. But as discussed above, the appraisal procedure was optional. *See* Part III(C)(2). A fact-finder could reasonably find that USAA had foreseen that the Blakelys would sue a responsible third party and incur attorney fees as a result of USAA's bad faith.[5]

For attorney fees from the present litigation, the district court did not discuss foreseeability. Instead, the district court determined that such attorney fees could be awarded only if there was another predicate damage

---

participation in the appraisal does not prevent a finding of bad faith for earlier conduct.

[5] In the alternative, USAA argues that (1) a subrogation agreement precludes such fees and (2) USAA already paid such fees. Appellee's Resp. Br. at 25-26. The Blakelys maintain otherwise and contend that USAA did not raise these arguments in the motion for summary judgment. Appellants' Reply Br. at 21-22. I agree that USAA did not raise these arguments in its summary-judgment motion; therefore I would not consider these arguments. *See Burnette v. Dresser Indus., Inc.* 849 F.2d 1277, 1285 (10th Cir. 1988) ("We will not address the first theory because [the defendant] did not raise it in its motion for summary judgment . . . .").

15

award. Having disposed of all of the Blakelys' other theories on damages, the district court denied these attorney fees.

In my view, however, the Blakelys may be able to recover other damages. Thus, I would reject the district court's rationale for denying attorney fees.[6] In addition, I believe that a jury could find that such attorney fees were foreseeable. Thus, I would reverse the award of summary judgment on the Blakelys' claim for attorney fees incurred in this litigation.

## IV. Ruling on Frivolousness: Damages for Diminution in the Value of the Blakelys' House

At a pretrial conference, the district court dismissed as legally frivolous the Blakelys' claim involving damages from diminution in the value of their house. Appellants' App'x, vol. VIII at 1575-76; *see also Blakely v. USAA Cas. Ins. Co.*, 633 F.3d 944, 949 (10th Cir. 2011) (noting that a district court may dismiss frivolous claims at a pretrial conference under Federal Rule of Civil Procedure 16(c)(2)(A)). In my view, the ruling was erroneous.

In considering this ruling, we apply the abuse-of-discretion standard. *Blakely*, 633 F.3d at 949.

---

[6] As a result, I have not addressed the Blakelys' contention that attorney fees for this litigation should be available even if the compensatory award were limited to nominal damages.

16

We previously found an abuse of discretion when the district court dismissed the implied-covenant claim. *Blakely v. USAA Cas. Ins. Co.*, 633 F.3d 944, 949-50 (10th Cir. 2011). There we stated the standard:

> "[A] complaint . . . is frivolous where it lacks an arguable basis either in law or in fact." *See Neitze v. Williams*, 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); *Denton v. Hernandez*, 504 U.S. 25, 33, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992) (describing frivolous claims as "fanciful," "fantastic," and "delusional," and holding "a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them.").

*Id*. Applying this standard, our court concluded that the Blakelys' claim was not "wholly incredible" and was not frivolous. *Id*. at 950. In my view, these conclusions are equally fitting here.

The district court considered the diminution-in-value claim as frivolous because USAA had fulfilled its express contractual obligations, which included paying for home repairs. Appellants' App'x, vol. VIII at 1575-76. The Blakelys agreed that USAA had paid for such repairs, but claimed that USAA's bad faith had required use of the insurance proceeds for appraisal and litigation expenses. *Id*. at 1576. The district court regarded the claim as frivolous because the Blakelys had not repaired their home even though they had been paid for these repairs. *Id*.

On appeal, the Blakelys reassert their position with some embellishment. *See* Appellant's Opening Br. at 46-50. In response, USAA

reasserts the district court's reasoning. Appellee's Resp. Br. at 32-33 ("Despite receiving money to restore the home to its original condition, the Blakelys did not repair that home.").[7]

We need not opine on whether the Blakelys' claim is persuasive, for it is at least arguable. Because of USAA's alleged bad faith, the Blakelys had to spend substantial funds for the appraisal and litigation. To spend those funds, the Blakelys had to dip into coffers that could otherwise have been used for home repairs. Thus, the Blakelys can reasonably argue that USAA's breach of the implied covenant caused the house to diminish in value notwithstanding USAA's eventual payments.

Neither USAA nor the district court has directly addressed the Blakelys' theory or identified any pertinent case law. Indeed, the issue appears to be one of first impression for *any* state. In light of the absence of pertinent guidance from USAA or any case law, I would regard the Blakelys' theory as at least arguable. *See Suazo v. NCL (Bahamas), Ltd.*, 822 F.3d 543, 556 (11th Cir. 2016) ("Where an appeal requires a court to decide an issue of first impression in a circuit court, it is not frivolous.").

---

[7] In the alternative, USAA asserts that the policy did "not provide for any diminution of value." Appellee's Resp. Br. at 32. But damages for breaching the covenant of good faith and faith dealing are not confined to the parties' express contractual obligations. *Machan v. UNUM Life Ins. Co. of Am.*, 116 P.3d 342, 345-46 (Utah 2005); *see* Part II(B), above.

18

As a result, I would reverse the dismissal of this claim based on frivolousness.

**V.    Conclusion**

In my view, we should reverse the district court's grant of summary judgment. The district court erroneously concluded that the Blakelys were foreclosed from claiming consequential damages for emotional distress, and the district court made factual findings that should have been left for the jury to decide. The district court also erroneously dismissed the Blakelys' claim for damages from their home's diminution in value. Because the majority upholds these rulings, I respectfully dissent.