FILED
United States Court of Appeals
Tenth Circuit

October 22, 2012

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

_____

ALAN BLAKELY; COLELYN
BLAKELY,

     Plaintiffs-Appellants,

v.

USAA CASUALTY INSURANCE
COMPANY,

     Defendant-Appellee.

No. 11-4218
(D.C. No. 2:06-CV-00506-BSJ)
(D. Utah)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **KELLY**, **BALDOCK**, and **EBEL**, Circuit Judges.
_____

Plaintiffs Alan and Colelyn Blakely experienced a fire in their Utah home's

basement in 2002. Their house was insured by Defendant USAA Casualty Insurance

Company. After becoming dissatisfied with Defendant's handling of the case, Plaintiffs

sued Defendant on a number of theories. After six years of litigation and a trip to this

Court last year, only one of Plaintiffs' causes of action remains at issue—a claim for

breach of the contractual duty of good faith and fair dealing. The district court granted

Defendant summary judgment on this claim, and Plaintiffs appealed. We have

---

[*] This order and judgment is not binding precedent except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

jurisdiction under 28 U.S.C. § 1291, and we reverse.

I.

The fire in Plaintiffs' basement broke out when a flammable sealant being applied by a flooring contractor caught fire. The fire was mostly contained to the unfinished basement, but smoke and soot affected the rest of the house. The fire partially burned many of the floor joists exposed in the basement and some of the exposed subflooring. Plaintiffs had a homeowners' insurance policy issued by Defendant that covered dwelling and personal property losses, as well as temporary living expenses. The insurance contract required Plaintiffs to send Defendant a signed, sworn proof of loss that included detailed repair estimates and an inventory of damaged personal property. Appellants' App. at 1225. The contract specified that Defendant would pay Plaintiffs "60 days after we receive your proof of loss and . . . reach an agreement with you . . . there is an entry of final judgment; or . . . there is a filing of an appraisal award with us." Id. at 1235. The contract contained an "appraisal" option that said, "If you [the insured] and we [the insurer] do not agree on the amount of loss, either party can demand that the amount of the loss be determined by an appraisal." Id. at 1226. The appraisal would be conducted by three appraisers, chosen in a manner specified in the contract, and the appraisers' opinion as to the amount of loss would be binding. Id.

Defendant sent an adjuster to Plaintiffs' home within twenty-four hours of the fire, and the adjuster explained Plaintiffs could select a contractor to conduct repairs. Plaintiffs' first choice was the contractor who built the home, but this contractor declined the job. So Plaintiffs agreed to Defendant's preferred contractor, Phipps Construction.

- 2 -

Plaintiffs claim they were "pressured" into choosing Phipps, because Defendant told them it would not guarantee work done by any other contractor.

A dispute soon arose regarding the extent of the repairs. For example, Plaintiffs wanted Phipps Construction to replace all the charred floor joists exposed in the basement, but Defendant only wanted Phipps to replace some of them. In an attempt to resolve the dispute, Defendant hired a structural engineer to inspect the property. The engineer reported that most of the floor joists were "slightly burned," along with some subflooring, but that for structural purposes only three of the joists needed to be replaced. Id. at 93–94. The report noted that "other considerations may impact the extent of the structural repairs," including the joist manufacturer's warranty and "odor, or finishing difficulties." Id. at 94. Phipps Construction only replaced two or three of the most badly burned joists and left the other charred joists in place.[1] In response to Plaintiffs' repeated complaints, Defendant eventually agreed to replace about two square feet of the first level's subflooring, but the contractor left additional charred subflooring in place. According to Plaintiffs, Defendant's adjuster "rarely responded" to telephone and email messages regarding the inadequacy of repairs. Id. at 843. Plaintiffs told the adjuster their house still smelled of smoke and had smoke lines on the ceiling. The adjuster claimed not to be able to smell smoke and dismissed the lines as "shadows." Id. at 844.

Plaintiffs also had problems with Defendant's personal property adjuster, who

---

[1] Alan Blakely stated in an affidavit that Phipps Construction only replaced "two of the many burned joists." Appellants' App. at 842. Bryan Phipps, the owner of Phipps Construction, testified in his deposition that he replaced three joists, and installed three additional floor joists alongside of damaged ones. Id. at 321. The exact number is immaterial.

worked in Colorado. This adjuster never traveled to Utah, but delegated her duties to Mrs. Phipps, the wife of the Phipps Construction's owner. When an initial dry cleaning damaged some clothing and household furnishings, Mrs. Phipps and the adjuster refused to replace the items. After a long fight, the adjuster did agree to replace some damaged custom drapes, but even then, the substitute drapes did not match the originals. Ultimately, by mid-2003 Defendant had paid out $93,332.20 under the policy— $47,789.94 for "dwelling/structural," $37,832.70 for unscheduled personal property, and $7,709.56 for temporary housing. Because Plaintiffs were not satisfied with the condition of their home, they did additional cleaning and made further repairs at their own expense.

In January 2005, more than two years after the fire, Plaintiffs finally invoked their contractual right to an appraisal. In the intervening time, they had been trying to pursue their claims against the flooring contractor whose apparent negligence started the fire. This suit ended in a settlement, but Defendant received most of the settlement proceeds in subrogation. Along with their appraisal demand, Plaintiffs asserted they were entitled to a total payment of $468,576.05, consisting of $286,239 for the dwelling, $162,627.14 for unscheduled personal property, and $19,709 for additional living expenses. Id. at 104.

The three appraisers selected pursuant to the contract inspected the house, and noted they could still smell smoke. They determined additional joists needed to be replaced. The appraisers awarded a total of $197,524.32, consisting of $162,738.17 for dwelling/structural repairs, $26,286.71 for unscheduled personal property, and $9,000 for additional living expenses (minus a $500 deductible). This, on top of Defendant's earlier

payout, brought the total compensation to $291,356.52—an amount significantly higher than Defendant's initial $93,332.20 payout but much lower than Plaintiffs' demand of $468,576.05.

Plaintiffs filed this suit against Defendant in state court in June 2006, asserting claims for emotional distress, breach of statutory duties, breach of contract, and breach of the implied covenant of good faith and fair dealing. Defendant removed to federal court based on diversity jurisdiction. The district court granted Defendant summary judgment on all the claims except for breach of the covenant of good faith. As to that claim, the district court "granted [Defendant's] oral motion to dismiss the claim . . . as frivolous under Fed. R. Civ. P. 16(c)(2)(A)." Blakely v. USAA Cas. Ins. Co., 633 F.3d 944, 947 (10th Cir. 2011).[2] We affirmed summary judgment on the substantive claims, but reversed the district court's holding that the good faith and fair dealing claim was frivolous. We said:

> In this case, the Blakelys alleged and put forth the following evidence suggesting that USAA acted unreasonably in taking its initial position regarding the loss amount: the appraisal award was nearly three times, or $200,000 more, than USAA's initial payout of $93,322.20; USAA's

---

[2] The district court, in the order now under review, takes issue with this characterization of its August 7, 2009, Order of Dismissal. Blakely v. USAA Cas. Ins. Co., 2011 WL 6218212 at *1 n.1 (D. Utah Dec. 6, 2011). The district court apparently thought it granted summary judgment *sua sponte* on the good faith and fair dealing claim, rather than dismissing it as frivolous under Rule 16(c). Id. District courts may choose to enter summary judgment *sua sponte* after notice to the losing party, Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). But the district court's order in this case was labeled "Order of Dismissal (Fed. R. Civ. P. 16(c), 56)" and the court "dismissed" Plaintiffs' claims. Entering summary *judgment* is not the same thing as *dismissing* a claim, and the actions are subject to different standards. See Fed. R. Civ. P. 56(a), 12(b), 16(c)(A). Therefore, the most logical reading of the district court's "Order of Dismissal" was as a dismissal under Rule 16(c).

adjuster refused to communicate with the Blakelys; USAA's adjuster claimed that he could not smell smoke when the smell proved noticeable in the house three years later; USAA delegated adjustment of the contents claim to a non-adjuster; and USAA refused to pay for any repairs other than structural ones.

Id. at 950. Although we "express[ed] no opinion" on whether the evidence was sufficient to survive any other dispositive motions, we concluded the facts gave rise to a claim that was not frivolous. Id. On remand, Defendants moved for summary judgment, and the district court granted the motion. The court reasoned that Defendant's denial of additional coverage was "fairly debatable" as a matter of law, and therefore did not breach the covenant of good faith and fair dealing.[3] Blakely v. USAA Cas. Ins. Co., 2011 WL 6218212 at *15 (D. Utah Dec. 6, 2011).

## II.

"We review a grant of summary judgment de novo, applying the same standard as the district court." E.E.O.C. v. Picture People, Inc., 684 F.3d 981, 994 (10th Cir. 2012). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We review the evidence in the light most favorable to the nonmoving party. Cortez v. McCauley, 478 F.3d 1108, 1115 (10th Cir. 2007) (en banc). The party

---

[3] The district court expressed understandable frustration with the parties' citations to the "record," which were really citations to almost everything *but* the record, including the district court's 2009 Order of Dismissal, the Tenth Circuit's opinion in the prior appeal, and the *appellate* record in the prior appeal. The district court nevertheless exercised its discretion under Federal Rule of Civil Procedure 56(c)(3) to consider materials not cited by the parties, including exhibits attached to the parties' prior motions. So the parties' inadequate citations did not affect the outcome in the district court, and Plaintiffs have provided us with an adequate record on appeal.

seeking summary judgment bears the initial burden of indicating the portions of the record that "demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "If the movant meets this initial burden, the burden then shifts to the nonmovant to 'set forth specific facts' from which a rational trier of fact could find for the nonmovant." Libertarian Party of NM v. Herrera, 506 F.3d 1303, 1309 (10th Cir. 2007) (quoting Fed. R. Civ. P. 56(e) (2007 version)).

Under Utah law, the implied obligation of good faith and fair dealing requires "at the very least, that the insurer will diligently investigate the facts to enable it to determine whether a claim is valid, will fairly evaluate the claim, and will thereafter act promptly and reasonably in rejecting or settling the claim." Beck v. Farmers Ins. Exchange, 701 P.2d 795, 801 (Utah 1985). The duty also requires the insurer to "deal with laymen as laymen and not as experts in the subtleties of law and underwriting and to refrain from actions that will injure the insured's ability to obtain the benefits of the contract." Id. (internal quotation marks omitted). Thus, "the overriding requirement imposed by the implied covenant is that insurers act reasonably, as an objective matter, in dealing with their insureds." Billings v. Union Bankers Ins. Co., 918 P.2d 461, 465 (Utah 1996). When, however, "an insured's claim is fairly debatable, the insurer is entitled to debate it and cannot be held to have breached the implied covenant if it chooses to do so." Id. That is, as long as the appropriateness of coverage was "fairly debatable at the time it was denied," an insurer does not breach the duty of good faith simply because a court later determines the insurer wrongfully denied coverage. Id.

Plaintiff argues the district court should not have granted summary judgment because the facts were "disputed." Appellant's Br. at 21. But Plaintiff cannot point us to any material facts that are actually in dispute.[4] We agree with the district court that the parties dispute merely the significance of the facts, not the facts themselves. Yet this does not mean summary judgment is automatically appropriate. Under Utah law, "[w]hether there has been a breach of good faith and fair dealing is a factual issue, generally inappropriate for decision as a matter of law." Oman v. Davis Sch. Dist., 194 P.3d 956, 968 (Utah 2008) (quoting Republic Group, Inc. v. Won-Door Corp., 883 P.2d 285, 291 (Utah Ct. App. 1994)). Oddly enough, the question of "[w]hether an insured's claim is fairly debatable under a given set of facts is . . . question of law," rather than of fact. Billings, 918 P.2d at 464. This is so, despite the fact that the "analysis of whether an insurance claim is fairly debatable is closely related to an analysis of whether an insurer fulfilled its duty under Beck to evaluate the claim fairly." Jones v. Farmers Ins. Exchange, --- P.3d ---, 2012 WL 3677052 at *4 (Utah 2012) (footnote omitted). The Utah Supreme Court recently tried to reconcile these contradictory notions. It clarified that although the "fairly debatable" defense is a matter of law, it is not always appropriately decided on summary judgment. Id. at *1. Rather, "the fairly debatable

---

[4] Plaintiff also argues the district court incorrectly applied a "directed verdict" standard, which is actually a rule of substantive law. Under that rule, the fairly debatable defense applies as a matter of law whenever the *insured* cannot show *he* is entitled to judgment as a matter of law on the underlying good faith claim. See Skaling v. Aetna Ins. Co., 799 A.2d 997, 1006 (R.I. 2002) (explaining and rejecting this standard). The Utah Supreme Court clarified in Jones that it does not follow this standard. Jones, 2012 WL 3677052 at *4. We find no evidence that the district court applied this erroneous rule of law. Even if it did, the question is moot in light of our reversal on other grounds.

defense should not be resolved through summary judgment if reasonable minds could differ as to whether the defendant's conduct measures up to the standard required for insurance claim investigations." Id. In such a case, the question of good faith should be presented to the jury. Id. at *5. Thus, the question before us is whether the undisputed facts demonstrate that "reasonable minds could differ" as to Defendant's compliance with Beck's standard for good faith and fair dealing. We answer that question in the affirmative.

We first must clarify what conduct is at issue. The district court focused its "fairly debatable" analysis on Defendant's denial of Plaintiffs' January 2005 demand for coverage totaling $468,576.05. But throughout the litigation, Plaintiffs have asserted that Defendant failed to act in good faith prior to January 2005 by failing to reasonably investigate the loss. Thus, the conduct we must examine is Defendant's conduct throughout the whole process of investigating, evaluating, and rejecting Plaintiffs' claim. See Beck, 701 P.2d at 801.

Looking at the entire course of Defendant's conduct, we conclude Plaintiffs have introduced facts sufficient to overcome summary judgment. First, Defendant refused to replace a number of charred floor joists, and only replaced a small section of burned subflooring after repeated complaints from Plaintiffs. Defendant makes much of the fact that it "performed all the repairs identified in [the structural engineer's] report." Appellee's Br. at 28. This is irrelevant, however, because the report specified that it only addressed structural concerns. In fact, the report suggested additional repairs were necessary to address the joist manufacturer's warranty and "odor, or finishing

difficulties." The appraisers later concluded that more of the burned joists needed to be replaced. So a jury could conclude Defendant did not act reasonably in refusing to replace the charred joists and in only replacing the subflooring after repeated complaints from Plaintiffs. Second, Defendant's structural adjuster refused at times to communicate with Plaintiffs. A jury could conclude from such evidence that Defendant's adjuster did not act reasonably in dealing with Plaintiffs. Third, Defendant's adjuster claimed not to be able to smell smoke, even though the appraisers could smell smoke three years later. A jury could easily infer from this fact that the adjuster made this self-serving claim in bad faith. Finally, Defendant's personal property adjuster did not travel to Utah, but instead delegated her duties to Mrs. Phipps, who was not an adjuster. This adjuster also denied coverage for numerous items of clothing and household furnishings that were damaged by attempts at cleaning. A jury could conclude the adjuster acted unreasonably in investigating and settling Plaintiffs' personal property claims.

In sum, all these facts suggest that Defendant acted unreasonably *apart* from the question of whether Defendant reasonably denied Plaintiffs' January 2005 demand. We are troubled by the district court's failure to discuss a number of these material facts, such as the adjuster's refusal to communicate and claim that he could not smell smoke, even though we noted them in our opinion in the prior appeal. Summary judgment requires the court to look at *all* the material facts and to view disputed facts in the light most favorable to the non-moving party. Wells v. Colo. Dep't of Transp., 325 F.3d 1205, 1209 (10th Cir. 2003). By limiting its analysis to the amount of coverage, the district court overlooked a number of pertinent facts.

Even when we focus on the amount of coverage, we conclude the "fairly debatable" defense does not apply on summary judgment here. Defendant initially underpaid Plaintiffs by almost $200,000. This at least raises an inference Defendant was less than diligent in investigating Plaintiffs' damages and did not "fairly evaluate the claim." Beck, 701 P.2d at 801. The district court recognized that this significant disparity "lend[s] some support to [Plaintiffs'] contention that [Defendant] significantly undervalued the extent of the fire loss to their home and its contents in its initial claim adjustment." Blakely, 2011 WL 6218212 at *12. Yet the district court relied heavily on the fact that Plaintiffs also "significantly overstated the extent of their fire loss, particularly as to personal property . . . ." Id. Thus, in the district court's mind, the amount of loss was fairly debatable because the appraisal amount lay somewhere between the parties' estimates. The Utah Supreme Court's recent decision in Jones, however, indicates that summary judgment is inappropriate in such a case.

In Jones, the plaintiff was injured in an automobile accident by an at-fault driver. Jones, 2012 WL 3677052 at *1. Because the other driver's insurance did not fully compensate him, the plaintiff made a claim against his own insurer, Farmers Insurance, for $30,000 of underinsured motorist coverage. Id. Farmers disputed the claim, part of which was for cracked teeth, because the plaintiff's dentist only discovered the cracks four years after the accident. Id. Although the dentist informed Farmers the plaintiff's teeth "were cracked during the accident," Farmers denied the claim on the basis of causation, reasoning that most people with cracked teeth would have reported them sooner. Id. The plaintiff rejected Farmers' offer of $5,000 and eventually received an

- 11 -

arbitration award of $18,500.  Id. at *2.  The plaintiff then sued for bad faith, and the state district court granted summary judgment for Farmers.  Id.  The Utah Supreme Court held that summary judgment was inappropriate because "[r]easonable minds could differ regarding whether [the plaintiff's] failure to complain of tooth damage earlier rendered his claim fairly debatable."  Id. at *5.

The district court in this case did not have the benefit of Jones, which was decided while this case was on appeal.  But Jones is incompatible with the district court's reasoning.  In Jones, the plaintiff's claim was for $30,000, which was $11,500 higher than the final arbitration award.  Farmers' settlement offer of $5,000 was $13,500 *lower* than the arbitration award.  Yet the Utah Supreme Court did not conclude on the basis of these numbers that the plaintiff's $30,000 claim was therefore "fairly debatable" as a matter of law.  Instead, it held that reasonable minds could differ whether Plaintiff's claim—even though it was for $30,000—was fairly debatable.  Here, Plaintiffs' January 2005 demand was $177,218.53 higher than the final appraisal award and the amount Defendant paid voluntarily was $197,524.32 lower than the appraisal award.  The ratio of undervaluation to overvaluation is almost exactly the same as in Jones.  So this arithmetic alone is not enough to render Plaintiffs' claim "fairly debatable."  A jury could conclude Defendant breached its duties by undervaluing Plaintiffs' loss, regardless of whether Plaintiffs overvalued their loss.

Defendant raises an alternative argument that it did not raise below.  We may, of course, "affirm on any basis supported by the record," even if it was not ruled on or argued below.  Richison v. Ernest Group, Inc., 634 F.3d 1123, 1130 (10th Cir. 2011).

- 12 -

Defendant argues Plaintiffs "seek to use the implied covenant of good faith to avoid providing 'proof of loss' as set forth in the contract." Appellee's Br. at 33–34. Although Plaintiffs apparently prepared a personal property inventory, the record does not indicate that they ever submitted a signed, sworn proof of loss. This contractual provision cannot, however, excuse Defendant from its duty of good faith. Defendant did not invoke this provision when it denied Plaintiffs' additional claims, and Defendant never told Plaintiffs they needed to provide a proof of loss. In fact, Defendant apparently made its initial payouts without receiving a proof of loss. Defendant cannot, at this late date, invoke a contractual provision it failed to rely on in its initial settlement of Plaintiffs' claim. Additionally, the signed proof of loss was only necessary to trigger Defendant's duty to pay money. It was not relevant to whether Defendant acted reasonably in investigating and evaluating the claim. Defendant was on notice of Plaintiffs' demands, yet Defendant's representatives said nothing about the proof of loss provision. At the very least, a jury could find that Defendant acted unreasonably by not instructing Plaintiffs to submit their claims in a signed proof of loss.

Because Plaintiffs have adduced sufficient evidence of Defendant's bad faith that reasonable minds could differ as to whether Defendant breached the covenant of good faith and fair dealing, summary judgment was inappropriate.

REVERSED and REMANDED.

Entered for the Court,

Bobby R. Baldock
United States Circuit Judge

- 13 -