BACHARACH, J.,
dissenting.
I respectfully dissent. Unlike the majority, I believe that a reasonable fact-finder, guided by applicable Utah law, could find that as a result of the defendant’s bad faith, the Blakelys suffered damages for
• emotional distress,
• lost income,
• appraisal expenses and attorney fees, and
• other attorney fees.
I also believe that the Blakelys could at least reasonably argue that the recoverable damages included the diminution in the value of their house. As a result, I would reverse the district court’s rulings.
I. The Blakelys allegedly suffered damages from breach of the implied covenant of good faith and fair dealing.
Plaintiffs Mr. Alan Blakely and Mrs. Colelyn Blakely had a home insurance policy with Defendant USAA Casualty Insurance Company. In August 2002, a home fire caused significant damage to their home, leading the Blakelys to submit an insurance claim to USAA.
The Blakelys were dissatisfied with USAA’s response, believing that USAA had not paid enough for the fire damage, had refused to make necessary repairs, had avoided communication, and had im *543 properly delegated tasks to non-adjusters. This dissatisfaction led the Blakelys to take matters into their own hands, making repairs at their own expense, suing the contractor responsible for the fire (Stone Touch), and invoking the insurance policy’s option for an appraisal procedure. The appraisal procedure led to a determination that USAA had substantially underpaid the Blakelys. Complying with this determination, USAA paid more to the Blakelys; and the parties agree that USAA has now paid everything required under the express terms of the policy.
But the Blakelys allege that USAA had acted improperly earlier, leading to this suit, which comes to us for the third time. See Blakely v. USAA Cas. Ins. Co., 633 F.3d 944 (10th Cir. 2011); Blakely v. USAA Cas. Ins. Co., 500 Fed.Appx. 734 (10th Cir. 2012). The only remaining claim is USAA’s alleged breach of the insurance policy’s implied covenant of good faith and fair dealing. On this claim, the Blakelys assert five theories of damages:
1. injuries from emotional distress
2. loss of income
3. expenses and attorney fees from the appraisal procedure
4. other attorney fees and
5. diminution in the value of their house.[1]
At a pretrial conference, the district court dismissed the Blakelys’ “diminution-in-value theory” as legally frivolous. USAA then moved for summary judgment, asserting that the Blakelys could not legally recover damages on their four other theories. The district court agreed and granted summary judgment to USAA on these four theories. The majority affirms, but I would reverse.
II, Legal Background
In this diversity case, we apply Utah substantive law. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). In applying Utah law, we follow the opinions of Utah’s Supreme Court. Wade v. EMCASCO Ins. Co., 483 F.3d 657, 665-66 (10th Cir. 2007). If the Utah Supreme Court has not issued a controlling opinion, we predict what the court would do, drawing guidance from Utah’s other courts, appellate opinions in other states with similar legal principles, federal district court opinions interpreting Utah law, and “‘the general weight and trend of authority.’” Id. at 666 (quoting MidAmerica Constr, Mgmt., Inc. v. Mas-Tec N. Am., Inc., 436 F.3d 1257, 1262 (10th Cir. 2006)).
A. Utah’s Implied Covenant of Good Faith and Fair Dealing
All contracts in Utah contain an implied covenant of good faith and fair dealing. Prince v. Bear River Mut. Ins. Co., 56 P.3d 524, 533 (Utah 2002). Under this covenant, the parties promise not to intentionally injure one another’s right to the fruits of the contract. Id. To keep this promise, the parties must act consistently with the contract’s common purpose and the parties’ justified expectations. Id. In the insurance context, this means that the insurer must reasonably- investigate, evaluate, and resolve an insured’s claim. Jones v. Farmers Ins. Exch., 286 P.3d 301, 304 (Utah 2012).
*544 B. Consequential Damages for Breaching the Implied Covenant
A party who breaches the implied covenant of good faith and fair dealing can incur liability for consequential damages. Machan v. UNUM Life Ins. Co. of Am., 116 P.3d 342, 345 (Utah 2005). These damages are not confined to the parties’ express contractual obligations. Id.
To recover such damages, the non-breaching party must prove that the particular damages were foreseeable when the parties contracted. Mahmood v. Ross, 990 P.2d 933, 938 (Utah 1999). Foreseeability hinges on the nature and language of the contract and on the parties’ reasonable expectations. Machan, 116 P.3d at 346.
Because damages lie “ ‘within the jury’s province,’” the existence and amount of damages constitute questions of fact. Lopez v. United Auto. Ins. Co., 274 P.3d 897, 905 (Utah 2012) (quoting Judd v. Drezga, 103 P.3d 135, 144 (Utah 2004)). In any given case, however, the court must “conform the jury’s findings to applicable law.” Judd, 103 P.3d at 144. Put otherwise, the jury makes factual findings against the backdrop of Utah law.
This backdrop includes guidance from the Utah Supreme Court on the availability of damages for emotional distress. In an “ ‘ordinary commercial contract,’ ” emotional-distress damages are foreseeable only if the damages were both “a foreseeable result of the breach of contract and explicitly within the contemplation of the parties.” Cabaness v. Thomas, 232 P.3d 486, 508 (Utah 2010) (emphasis in original) (quoting Stewart v. Rudner, 349 Mich. 459, 84 N.W.2d 816, 823 (1957)).
In the insurance context, however, explicit contemplation is not required. Insurance is purchased not only for compensation of a loss, but also to “ ‘provide peace of mind for the insured.’ ” Id. at 507 (quoting Beck v. Farmers Ins. Exch., 701 P.2d 795, 802 (Utah 1985)). Such peace of mind is a fruit of the contract that “the insured has bargained for.” Machan, 116 P.3d at 345. Put otherwise, an insured’s mental wellbeing is always on the minds of the contracting, parties.
But not every type of an insured’s mental distress is foreseeable. The Utah Supreme Court has held that emotional-distress damages are foreseeable only in “unusual cases.” Beck, 701 P.2d at 802. The court did not expressly define an “unusual” case, but indicated that an insurer could not foresee the need to compensate for the “disappointment, frustration, or anxiety” that an insured “normally” experiences in trying to obtain insurance proceeds from the insurer. Id. at 802 n.6; see Cabaness, 232 P.3d at 507-08. It appears, then, that emotional-distress damages are “unusual” if these damages extend beyond the “normal! ]” reactions of disappointment, frustration, or anxiety. See Beck, 701 P.2d at 802 n.6; see also Machan, 116 P.3d at 346 (suggesting that an insured could be compensated for the exacerbation of medical conditions caused by emotional stress (citing Acquista v. N.Y. Life Ins. Co., 285 A.D.2d 73, 730 N.Y.S.2d 272, 276 (2001))); Billings v. Union Bankers Ins. Co., 918 P.2d 461, 467-68 (Utah 1996) (affirming an award of emotional-distress damages when the insured’s lack of a complete recovery resulted in great mental distress).
To summarize, for an insured to recover emotional-distress damages, the damages must be unusual and foreseeable.
III. Summary Judgment Rulings: Emotional Distress, Lost Income, Expenses and Attorney Fees for the Appraisal Procedure, and Other Attorney Fees
We apply these legal principles in reviewing the summary-judgment rulings. *545 These rulings rejected the availability of damages for emotional distress, lost income, use of the appraisal procedure, and attorney fees unrelated to the approval procedure. I would reverse these rulings.
A. Standard of Review
We engage in de novo review, viewing the evidence and drawing all reasonable inferences in favor of the Blakelys. Birch v. Polaris Indus., Inc., 812 F.3d 1238, 1251 (10th Cir. 2015). Summary judgment was proper only if
• there was no genuine dispute regarding a material fact and
• USAA was entitled to judgment as a matter of law.

Id.

B. The district court improperly concluded that the Blakelys are not entitled to consequential damages for emotional distress.
The district court concluded that the Blakelys had failed to prove that their emotional distress was unusual or foreseeable. This conclusion was erroneous for two reasons:
1. The Blakelys presented evidence of damages for emotional distress surpassing the mere “disappointment, frustration, or anxiety” that commonly arises when seeking insurance proceeds.
2. When entering the insurance agreement, the parties could foresee emotional-distress damages arising from USAA’s bad faith, as this agreement was meant to provide security and peace of mind by insuring the Blake-lys’ most intimate space — their home.
First, Mr. and Mrs. Blakely’s injuries are “unusual” and would be compensable under Utah law. For example, the Blakelys presented evidence of the development and exacerbation of medical conditions resulting from stress created by USAA’s alleged bad faith. See Machan, 116 P.3d at 346 (suggesting that an insured could be compensated for stress-induced exacerbation of medical conditions).
For example, Mr. Blakely presented evidence of high blood pressure caused by his interactions with USAA. See Appellants’ App’x, vol. II at 353; Appellants’ App’x, vol. VII at 1318; Appellants’ App’x, vol. VIII at 1614. Mrs. Blakely similarly presented evidence of depression, fibromyal-gia, and headaches from the' “continued stress” created by USAA’s conduct. Appellants’ App’x, vol. I at 176; Appellants’ App’x, vol. VI at 1138; see also Appellants’ App’x, vol. II at 353 (alleging that the conflict with USAA “seriously progressed” Mrs. Blakely’s physical conditions). These injuries are not the result of typical “disappointment, frustration, or anxiety” from dealing with an insurance company, and the district court erred in concluding otherwise.[2]
The Blakelys also presented evidence involving heightened distress when they had to leave their home for an extended period and return before the repairs were complete. This evidence indicated that the Blakelys needed to return too early, exposing them to the sight of fire damage and the smell of smoke, which created distress *546 that was beyond ordinary. Appellant’s App’x, vol. II at 353, 371.
Second, the district court erred by concluding that the contracting parties could not have foreseen damages for emotional distress. The Utah Supreme Court has explained that insurance is purchased to “provide peace of mind.” Beck v. Farmers Ins. Exch., 701 P.2d 795, 802 (Utah 1985), And a breach of the implied covenant of good faith for a contract that is “specifically directed toward matters of mental concern and solicitude” is likely to result in damages for emotional distress and mental anguish. Cabaness v. Thomas, 232 P.3d 486, 508 (Utah 2010).[3]
Not all damages are foreseeable when an insurer violates an insurance policy in bad faith. See Beck, 701 P.2d at 802 (noting that in unusual cases, emotional-distress damages “might be provable”). But this was not just any insurance policy; this was insurance that covered the insureds’ home. See Hargrave v. Leigh, 73 Utah 178, 273 P. 298, 301 (1928) (noting that the “natural consequence” for being forced to leave one’s home can include “mental anguish and suffering”). A fact-finder might reasonably find that USAA could foresee that its conduct would directly affect the Blake-lys’ ability to enjoy the refuge and solace of their home, resulting in the sort of emotional distress that the Blakelys allegedly suffered. See Orkin Exterminating Co. v. Donavan, 519 So.2d 1330, 1333 (Ala. 1988) (“The breach of a contract ... which affects the habitability of a house, can reasonably be foreseen to affect the solicitude and well-being of the occupants.”); see also John A. Sebert, Jr., Punitive and Nowpecuniary Damages in Actions Based Upon Contract: Toward Achieving the Objective of Full Compensation, 33 UCLA L. Rev. 1565, 1589 & n.88 (1986) (explaining that courts permit damages for emotional distress in connection with contracts involving a person’s home, while courts have disallowed damages for emotional distress in commercial contexts).
The Blakelys’ policy specifically addressed their ability to live in their house. For example, USAA promised to insure any additional living expenses if the Blake-lys’ house was “not fit to live in ... so that [the Blakelys could] maintain [their] normal standard of living.” Appellants’ App’x, vol. VI at 1233. And the policy specifically disclaimed coverage for the Blakelys’ commercial activities conducted on the premises, providing further evidence that the insurance policy was specifically directed toward matters of mental concern and solicitude. See id, at 1216, 1228 (excluding insurance coverage for “business” or “rental” property and activities).
For this reason, a material fact-question existed on whether USAA could have foreseen the availability of emotional-distress damages. The Blakelys presented evidence suggesting more than simple disappointment, frustration or anxiety; and the parties’ focus on the intimate space of a home could have led USAA to foresee damages for emotional distress. Thus, the district court erred in granting summary judg *547 ment to USAA on the claim for emotional-distress damages.
C. The district court erred in granting summary judgment to USAA on the Blakelys’ claims for consequential damages from (1) lost income, (2) expenses and attorney fees incurred in the appraisal procedure, and (3) attorney fees unrelated to the appraisal procedure.
The summary-judgment ruling also addressed three other forms of consequential damages: (1) lost income, (2) expenses and attorney fees from using the optional appraisal procedure, and (3) other attorney fees. For the first two — lost income and appraisal damages — the district court held that the damages were unavailable because they were unforeseeable. I respectfully disagree.
For the third form of damages — attorney fees unrelated to the appraisal — the district court divided the damages into two subcategories:
1. attorney fees from the Stone Touch litigation and
2. attorney fees from the present litigation.
For the first subcategory, the district court held that attorney fees were not reasonably foreseeable. For the second subcategory, the court concluded that the Blakelys could not recover such fees given the absence of any other predicate damages. I believe that the district court erred with regard to both subcategories.
1. The fact-finder might reasonably infer that USAA could foresee the need to compensate for lost income upon a breach of the implied covenant of good faith and fair dealing.
The district court concluded that the Blakelys’ home insurance policy did not cover lost income. According to the district court, the absence of express coverage for lost income prevented USAA from foreseeing this type of loss. But the district court mistook the nature of its inquiry. “[Cjonse-quential damages that an insured might foreseeably incur due to an insurance company’s breach of the implied covenant of good faith may encompass ‘losses well in excess of the policy limits, such as for a home...” Machan v. UNUM Life Ins. Co. of Am., 116 P.3d 342, 345-46 (Utah 2005) (quoting Beck v. Farmers Ins. Exch., 701 P.2d 795, 802 (Utah 1985)). The Blake-lys allegedly suffered lost income because they had spent personal time repairing their home.
The fact-finder might reasonably find that USAA could foresee the need to compensate for lost income upon a breach of the implied covenant of good faith and fair dealing. And foreseeability is a question of fact, which generally cannot be decided on summary judgment. See Rees v. Albertson’s, Inc., 587 P.2d 130, 133 (Utah 1978) (stating that causation requires reasonable foreseeability, which involves a factual question “generally for the fact-trier, court or jury, to determine”). Thus, USAA was not entitled to summary judgment on the claim for lost income.
2. Appraisal-related expenses and attorney fees could be recoverable upon a breach of the implied covenant of good faith and fair dealing.
The district court also rejected the Blakelys’ claims involving expenses and attorney fees from using the appraisal procedure, reasoning that the insurance policy defined who would pay. But the Blakelys presented evidence showing that they had resorted to the appraisal procedure only because USAA had breached the implied covenant of good faith and fair dealing.
*548 This evidence suggests that the Blakelys would not have needed to use the appraisal procedure if USAA had acted in good faith. The appraisal procedure was only an option, not a requirement, in the event of a dispute. See Appellants’ App’x, vol. VI at 1226 (“[E]ither party can demand ... appraisal .... ” (emphasis added)); id. at 1235 (noting that' USAA will pay for losses if the parties either reach an agreement, go through appraisal, or receive “entry of a final judgment”). A fact-finder could reasonably find that the policy had been designed to allocate expenses for reasonable disputes, not disputes created by USAA’s breach of the implied covenant of good faith and fair dealing. See Beck v. Farmers Ins. Exch., 701 P.2d 795, 801 (Utah 1985) (“When an insurer has breached [the implied] duty [of good faith], it is liable for damages suffered in consequence of that breach.”).
Nonetheless, USAA argues that the Blakelys waited too long to invoke the appraisal procedure. Appellee’s Resp. Br. at 22. The majority similarly states that the Blakelys “offer no explanation for their three-year delay in invoking the appraisal procedure” and characterizes the appraisal damages as “delay-related distress.” Maj. Op. at 536.
But the appraisal procedure was optional, and the fact-finder could reasonably find that the Blakelys had a good reason for delaying appraisal. As we said in a prior appeal, the Blakelys waited because “they had been trying to pursue their claims against [Stone Touch].” Blakely v. USAA Cas. Ins. Co., 500 Fed.Appx. 734, 737 (10th Cir. 2012). And the Blakelys presented evidence indicating that they had to sue Stone Touch only because USAA had allegedly acted in bad faith. In these circumstances, the fact-finder could justifiably find that the Blakelys had acted reasonably in the face of USAA’s resistance, pursuing the tortfeasor that caused the fire and then resorting to the appraisal procedure.
In my view, a genuine, material factual dispute exists on the recoverability of the Blakelys’ expenses and attorney fees incurred in the appraisal procedure.[4]
3. The parties’ agreement may have contemplated other attorney fees.
The Blakelys also claimed attorney fees from the Stone Touch litigation and from the present litigation. The district court rejected these claims.
For attorney fees from the Stone Touch litigation, the district court reasoned that attorney fees were not foreseeable given the policy’s discussion of the appraisal procedure. But as discussed above, the appraisal procedure was optional. See Part 111(C)(2). A fact-finder could reasonably find that USAA had foreseen that the Blakelys would sue a responsible third party and incur attorney fees as a result of USAA’s bad faith.[5]
*549 For attorney fees from the present litigation, the district court did not discuss foreseeability. Instead, the district court determined that such attorney fees could be awarded only if there was another predicate damage award. Having disposed of all of the Blakelys’ other theories on damages, the district court denied these attorney fees.
In my view, however,.the Blakelys may be able to recover other damages. Thus, I would reject the district court’s rationale for denying attorney fees.[6] In addition, I believe that a jury could find that such attorney fees were foreseeable. Thus, I would reverse the award of summary judgment on the Blakelys’ claim for attorney fees incurred in this litigation.
IV. Ruling on Frivolousness: Damages for Diminution in the Value of the Blakelys’ House
At a pretrial conference, the district court dismissed as legally frivolous the Blakelys’ claim involving damages from diminution in the value of their house. Appellants’ App’x, vol. VIII at 1575-76; see also Blakely v. USAA Cas. Ins. Co., 633 F.3d 944, 949 (10th Cir. 2011) (noting that a district court may dismiss frivolous claims at a pretrial conference under Federal Rule of Civil Procedure 16(c)(2)(A)). In my view, the ruling was erroneous.
In considering this ruling, we apply the abuse-of-discretion standard. Blakely, 633 F.3d at 949.
We previously found an abuse of discretion when the district court dismissed the implied-covenant claim. Blakely v. USAA Cas. Ins. Co., 633 F.3d 944, 949-50 (10th Cir. 2011). There we stated the standard:
“[A] complaint ... is frivolous where it lacks an arguable basis either in law or in fact.” See Neitzke v. Williams, 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); Denton v. Hernandez, 504 U.S. 25, 33, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992) (describing frivolous claims as “fanciful,” “fantastic,” and “delusional,” and holding “a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them.”).
Id. Applying this standard, our court concluded that the Blakelys’ claim was not “wholly incredible” and was not frivolous. Id. at 950. In my view, these conclusions are equally fitting here.
The district court considered the diminution-in-value claim as frivolous because USAA had fulfilled its express contractual obligations, which included paying for home repairs. Appellants’ • App’x, vol. VIII at 1575-76. The Blakelys agreed that USAA had paid for such repairs, but claimed that USAA’s bad faith had required use of the insurance proceeds for appraisal and litigation expenses. Id. at 1576. The district court regarded the claim as frivolous because the Blakelys had not repaired their home even though they had been paid for these repairs. Id.
On appeal, the Blakelys reassert then-position with some embellishment. See Appellant’s Opening Br. at 46-50. In response, USAA reasserts the district court’s reasoning. Appellee’s Resp. Br. at 32-33 (“Despite receiving money to restore the home to its original condition, the Blakelys did not repair that home.”).[7]
*550 We need not opine on whether the Blakelys’ claim is persuasive, for it is at least arguable. Because of USAA’s alleged bad faith, the Blakelys had to spend substantial funds for the appraisal and litigation. To spend those funds, the Blakelys had to dip into coffers that could otherwise have been used.for home repairs. Thus, the Blakelys can reasonably argue that USAA’s breach of the implied covenant caused the house to diminish in value notwithstanding USAA’s eventual payments.
Neither USAA nor the district court has directly addressed the Blakelys’ theory or identified any pertinent case law. Indeed, the issue appears to be one of first impression for any state. In light of the absence of pertinent guidance from USAA or any case law, I would regard the Blakelys’ theory as at least arguable. See Suazo v. NCL (Bahamas), Ltd., 822 F.3d 543, 556 (11th Cir. 2016) (“Where an appeal requires a court to decide an issue of first impression in a circuit court, it is not frivolous.”). As a result, I would reverse the 1 dismissal of this claim based on frivolousness.
V. Conclusion
In my view, we should reverse the district court’s grant of summary judgment. The district court erroneously concluded that the Blakelys were foreclosed from claiming consequential damages for emotional distress, and the district court made factual findings that should have been left for the jury to decide. The district court also erroneously dismissed the Blakelys’ claim for damages from their home’s diminution in value. Because the majority upholds these rulings, I respectfully dissent.

. The Blakelys also appear to assert a sixth theory: physical damages from the exacerbation of their preexisting medical conditions. As the majority explains, however, the Blake-lys never presented this theory in district court as a stand-alone claim. Maj. Op, at 534-35. Therefore, I consider such damages as encompassed within the Blakelys’ emotional-distress damages.

. In the alternative, USAA contends that the Blakelys lack evidence of exacerbation of their medical conditions. Appellee’s Resp. Br. at 19-22. The Blakelys maintain otherwise and point out that this contention was not argued as a ground for summary judgment. Appellants' Reply Br. at 12. Assuming that USAA properly raised this contention, I would conclude that a reasonable fact-finder could infer exacerbation of medical conditions from USAA’s handling of the claim. See id. at 13-15 (providing citations to the summary-judgment record).

. The district court characterized Cabaness as a clarification or modification of Beck, creating a requirement for explicit contemplation of emotional-distress damages at the time of the contract. See Blakely v. USAA Cas. Ins. Co., No. 06-CV-00506, 2015 WL 1522752, at *9 (D. Utah Apr. 2, 2015) (stating that Cabaness "clarified, or at least modified” Beck, and holding that emotional-distress damages were not foreseeable in part because "there is no evidence that emotional damages ... were contemplated explicitly, by the parties”). But, Cabaness discussed explicit contemplation in the context of an "ordinary commercial contract,” as opposed to insurance contracts, which always contemplate an insured's peace of mind. See Part 11(B), above.

. USAA also asserts that it acted in good faith because it "did not deny the appraisal request.” Appellee’s Resp. Br, at 23. But USAA’s participation in the appraisal does not prevent a finding of bad faith for earlier conduct.

. In the alternative, USAA argues that (1) a subrogation agreement precludes such fees and (2) USAA already paid such fees. Appel-lee’s Resp. Br. at 25-26. The Blakelys maintain otherwise and contend that USAA did not raise these arguments in the motion for summary judgment. Appellants’ Reply Br. at 21-22. I agree that USAA did not raise these arguments in its summary-judgment motion; therefore I would not consider these arguments. See Burnette v. Dresser Indus., Inc., 849 F.2d 1277, 1285 (10th Cir. 1988) ("We will not address the first theory because [the defendant] did not raise it in its motion for summary judgment....”).

. As a result, I have not addressed the Blake-lys’ contention that attorney fees for this litigation should be available even if the compensatory award were limited to nominal damages.

. In the alternative, USAA asserts that the policy did "not provide for any diminution of *550 value.” Appellee’s Resp. Br. at 32. But damages for breaching the covenant of good faith and faith dealing are not confined to the parties' express contractual obligations. Machan v. UNUM Life Ins. Co. of Am., 116 P.3d 342, 345-46 (Utah 2005); see Part 11(B), above.